

**NUMBERS
13-11-00266-CR
13-11-00267-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FELIX ARGUELLEZ,**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

---

**On appeal from the 24th District Court
of De Witt County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

Appellant, Felix Arguellez, was charged with two offenses of improper photography, a state jail felony.[1]  *See* TEX. PENAL CODE ANN. § 21.15 (West 2011).

---

[1] The indictment in appellate cause number 13-11-266-CR alleges that the offense occurred on or about July 30, 2009, and the indictment in appellate cause number 13-11-267-CR alleges that the offense occurred on or about August 4, 2009.  The State's brief asserts that the July 30th offense occurred at the municipal pool in Cuero, Texas, and the other offense occurred at the country club pool at Yorktown,

Following the trial court's denial of his motion to suppress, appellant pleaded nolo contendere to both offenses. The trial court sentenced him to twenty months' confinement in state jail and imposed a $2,500 fine in each case, with the sentences to run concurrently. By a single issue, appellant contends the trial court erred in denying his motion to suppress. We affirm.

## I. BACKGROUND

City of Cuero, Texas, police officers Corey Tolbert and David Guajardo testified at the suppression hearing. Officer Tolbert testified that on July 30, 2009, while on patrol, he heard a dispatcher call to Officer Guajardo. The dispatcher reported that a man in a tan Ford Taurus, parked by the fence at the city pool, was taking photographs of swimmers. Officer Talbot, who was closer to the city pool than Officer Guajardo, reached the area first. Upon reaching the pool area, Officer Tolbert spotted the reported vehicle leaving the pool. The dispatcher reported that the complainant was still on the line and had confirmed that Officer Tolbert was behind the suspect's vehicle. Officer Tolbert initiated a traffic stop of the vehicle. He identified appellant as the driver and noticed a camera in the console area of the front seat. Officer Guajardo joined Officer Tolbert at the stop and was advised of the circumstances. Officer Tolbert asked Officer Guajardo to stay with appellant while Officer Tolbert returned to the pool area to speak to the complainant on the dispatch call. Officer Tolbert returned to the pool, identified the caller as Linda Popplewell, the pool manager, and spoke to her.[2] Officer

_____

Texas.
[2] At appellant's sentencing hearing, Popplewell testified that on July 30, 2009, Devonte Jackson came to her office and reported that "there was a man taking pictures of girls' butts." Popplewell stated that she called the police immediately and "told them exactly what Devonte said." At the same hearing, the State asked Officer Tolbert, "The call that came into dispatch you later found out when you got there was not an anonymous call. The caller identified herself as a Linda Popplewell; is that right?" Officer Tolbert answered, "Right, Ms. Popplewell." In reviewing a trial court's ruling on a motion to suppress, we

2

Tolbert returned to the stop location and the officers requested appellant's consent to look through the digital images stored on his camera. Appellant consented, and the officers looked through the photographs. The photographs were of women and young girls in bathing suits at the pool.

On cross-examination, Officer Tolbert said that the dispatcher told him that a man in a suspicious vehicle was taking pictures of people at the pool. In Officer Tolbert's opinion, the report of a man taking pictures justified the traffic stop. He stated that when the City of Cuero police receive a call, they initiate a stop and investigate.

Officer Guajardo testified that he was dispatched to the pool "in reference to a suspicious male in a brown Ford Taurus taking photos of people at the pool." He arrived at the traffic stop approximately two minutes after Officer Tolbert had stopped appellant's vehicle. Officer Guajardo stayed with appellant while Officer Tolbert returned to the pool to speak to the caller, which took approximately five or ten minutes. Officer Guajardo stated that after the officers looked at the photographs, they advised appellant that he was detained and requested that he provide a statement. According to Officer Guajardo, appellant was not arrested at that time. Appellant accompanied the officers to the police station, was given *Miranda* warnings, and gave a written statement. Appellant's statement states that he "was taking photos of women in bathing suits when [he] got the chance" and that he took photos "of a girl in a pink bathing suit just to see if the pictures came out good." He further stated that the other photos of women were taken at the Yorktown pool and "were taken just to see how the pictures came out."

Appellant filed identical motions to suppress in each case. Appellant argued that

---

generally consider only evidence adduced at the suppression hearing, since the ruling is generally based on that evidence, rather than evidence introduced later in the trial. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). Accordingly, we do not rely on this evidence in our analysis.

the officers lacked reasonable suspicion to stop his vehicle, the stop was therefore illegal, and all evidence, including his statement, should therefore be suppressed. At the conclusion of the suppression hearing, the trial court stated that because Officer Guajardo was told by the dispatcher that someone was acting suspiciously and could be found in a Ford Taurus, the officers had probable cause to stop appellant's vehicle. The court stated that "without commenting on whether or not the activity was suspicious or inappropriate," the fact that the officer was "told there was suspicious activity" was "sufficient for him to make a stop and investigate." After the trial court denied appellant's motion to suppress, appellant pleaded nolo contendere in each case.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). In reviewing a trial court's ruling on a motion to suppress evidence for an abuse of discretion, we use a bifurcated standard. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc) (citing *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89); *see Tellez v. State*, No. 09-10-348-CR, 2011 Tex. App. LEXIS 6990, at *3 (Tex. App.—Beaumont Aug. 24, 2011, no pet.) (mem. op., not designated for publication). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Amador*, 221 S.W.3d at 673 (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89. A determination of reasonable suspicion is made

4

by considering the totality of the circumstances. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Because the trial court here did not make formal written findings of fact, we review the evidence in a light most favorable to the trial court's ruling, and assume implicit findings of fact supported by the record. *Id.*

In *Derichsweiler v. State*, the court of criminal appeals stated the standard for determining when an investigative detention is supported by reasonable suspicion:

> Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." A 911 police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. Finally, information provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable. In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot.

348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011).

### III. DISCUSSION

Appellant argues that at the time of the stop, because Officer Tolbert did not know the identity of the caller, the caller was "anonymous," and therefore, the

5

anonymous tip lacked "sufficient indicia of reliability" to establish reasonable suspicion. *See Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (finding detention was not supported by reasonable suspicion where stop was based on information from anonymous tip, caller did not provide identifying information to officer or to dispatcher, and record did not establish that caller maintained contact with dispatcher throughout the incident). However, the record before us reflects that Popplewell's call to the police was not anonymous. Although Officer Tolbert did not know Popplewell's identity at the time of the stop, Popplewell identified herself to the dispatcher. Information known to the police dispatcher is imputed to the detaining officer. *Id.* at 924 (citing *Derichsweiler*, 348 S.W.3d at 915–16). We conclude that, as in *Derichsweiler*, the caller's reliability was established because the police dispatcher remained on the line with Popplewell and knew Popplewell's identity. *See Derichsweiler*, 348 S.W.3d at 915–16. Even if the dispatcher did not provide all of this information to Officer Tolbert, we consider it as part of the objective information that Officer Tolbert was entitled to rely on in making the investigative stop. *See id.* at 915 ("It matters not that the dispatcher did not pass all of these details along to the responding officers. In assessing reasonable suspicion, *vel non*, a reviewing court looks to the totality of objective information known *collectively* to the cooperating police officers, including the 911 dispatcher.").

"To support a reasonable suspicion, the articulable facts must show 'that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and *some indication that the unusual activity is related to crime*.'" *Id.* at 916 (quoting *Meeks v. State*, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983)) (emphasis in *Derichsweiler*). Here, the information known collectively to the police shows that: (1) Popplewell called the police, identified herself, and reported that appellant was taking

6

pictures of people at the pool; (2) Popplewell described the location, make, model, and color of appellant's vehicle; (3) Officer Tolbert spotted the reported vehicle leaving the pool area; and (4) the dispatcher, who remained in contact with Popplewell, confirmed that Officer Tolbert was behind the suspect vehicle. We hold that under the totality of the circumstances, this information provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, led to the reasonable conclusion that appellant was, had been, or soon would be engaged in criminal activity. *See id.* at 914; *see also LeCourias v. State*, 341 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (finding investigative detention justified by reasonable suspicion where information was reported to police by citizen-informant who identified himself to dispatcher and remained in contact with dispatcher until officer arrived at the scene).[3] Therefore, Officer Tolbert was justified by reasonable suspicion to conduct the stop and investigative detention of appellant. *See Derichsweiler*, 348 S.W.3d at 914.

## IV. CONCLUSION

We overrule appellant's sole issue and affirm the trial court's judgments.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
31st day of May, 2012.

---

[3] As applied to these prosecutions, a person commits the offense of improper photography by photographing or recording a visual image of another at a location not a bathroom or private dressing room without that person's consent, and with intent to arouse or gratify the sexual desire of any person. *See* TEX. PENAL CODE ANN. § 21.15.

7