

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1238-10, PD-1239-10

### JOHN DAVID MARTINEZ, Appellant

### v.

### THE STATE OF TEXAS

## ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
## VAL VERDE COUNTY

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion.

## O P I N I O N

In two cases stemming from the same incident, the state charged appellant with driving while intoxicated (DWI) and possession of marijuana. Appellant filed his motion to suppress based upon claims that the initial investigatory detention was without probable cause or reasonable suspicion and that the subsequent arrest and search of appellant's person and vehicle was without probable cause. After an evidentiary hearing, the trial court denied appellant's motion. Appellant then plead guilty to both charges, and the trial court assessed punishment at 180 days' confinement, probated for 12

months, and a $500 fine for the possession charge, and 180 days' confinement, probated for 12 months, and a $600 fine for the DWI charge.

The Fourth Court of Appeals affirmed appellant's convictions. *Martinez v. State*, 318 S.W.3d 24 (Tex. App.–San Antonio 2009, pet. granted). Appellant filed a motion for rehearing and a motion for reconsideration *en banc*, both of which were overruled. This Court granted appellant's petitions for discretionary review.[1] After review, we find that the officer did not have reasonable suspicion to make an investigatory stop of appellant's vehicle, and therefore, the court of appeals erred in affirming appellant's convictions. Accordingly, we reverse and remand the causes to the court of appeals for further proceedings.

**Facts**

The facts are undisputed. Officer Paul Hurley of the Del Rio Police Department was on patrol on a Sunday night. At 10:55 p.m., the police dispatcher radioed that an anonymous caller reported that a male driving a blue Ford pickup truck stopped at the intersection of 17th and Main Streets, put two bicycles into the back of the truck, and drove away westbound. Hurley was on patrol in the general area and spotted a green Ford F-250 truck that "looked like it was blue"[2] approximately three quarters of a mile away from the site of the reported incident. He began following the truck and called dispatch to confirm the vehicle description. He trailed the truck for four blocks without

---

[1] The three grounds that this Court granted review are whether:

1. The court of appeals improperly relied upon corroborating information obtained by the officer *after* the inception of a stop to justify reliance on an anonymous tipster's report;

2. A police officer's belief that an incident is "suspicious" is a specific, articulable fact that supports reasonable suspicion to justify the investigative detention of an individual;

3. The Fourth Amendment and the Texas Constitution permit a police officer to conduct an investigative detention of a male driving a blue Ford pickup truck based on an anonymous tipster's report that a person of that description stopped, picked up two bicycles, and drove off.

[2] I R.R. at 14.

observing any traffic violations, then stopped the vehicle. As he walked to driver's side of the truck, Officer Hurley noticed, in the truck bed, two bicycles that were not visible to him until he approached the truck. While speaking with appellant, the truck's driver, Hurley detected a strong odor of alcohol and noticed that appellant had bloodshot, glassy eyes.

Officer Hurley told appellant that his truck matched the description of a vehicle involved in a possible theft. Hurley called dispatch to see if there was a complaint of stolen bicycles at that location, and dispatch informed him that there was not. He then asked dispatch if the caller could come to the scene. The caller arrived at the location of the detention and confirmed that Hurley had pulled over the same truck that had picked up the two bicycles. Officer Hurley did not know the name of the caller, but did not believe that the caller had any relationship to the Del Rio Police Department. After he administered field-sobriety tests and a blood-alcohol test using a portable Breathalyzer, Officer Hurley arrested appellant for DWI. His subsequent search of appellant and his vehicle produced a usable amount of marijuana. No charges were filed in the supposed theft of the bicycles.

**Standard of Review**

In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement.[3] The appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure

---

[3] *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

questions of law and mixed questions that do not depend on credibility determinations.[4]

Officer Hurley was the only witness to testify during appellant's evidentiary hearing. The historical facts elicited from Officer Hurley's testimony are not at issue; the issue is whether these uncontroverted facts created a reasonable suspicion such that Officer Hurley was justified in initiating a *Terry* stop.[5] We review the record *de novo*.

At a suppression hearing, the state need not establish that a crime occurred prior to the investigatory stop, but it must elicit testimony showing sufficient facts to prove that reasonable suspicion existed that a particular person has engaged in, or soon will be engaging in, criminal activity.[6] This standard is an objective one;[7] the court will take into account the totality of the circumstances in order to determine whether a reasonable suspicion existed for the stop.[8] The determination of reasonable suspicion is dependant upon both the content of the information known to the officer and its degree of reliability.[9] To justify further investigation, the state must show that, at the time of the detention, the officer had specific, articulable facts that established reasonable suspicion.[10] Those facts must show unusual activity, some evidence that connects the detainee to

---

[4] *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997).

[5] *Terry v. Ohio*, 392 U.S. 1(1968) (reasonable suspicion required to justify an investigatory stop).

[6] *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

[7] *Terry*, 392 U.S. at 21–22.

[8] *U.S. v. Cortez*, 449 U.S. 411, 417–418 (1981).

[9] *Alabama v. White*, 496 U.S. 325, 330 (1990).

[10] *Florida v. J.L.*, 529 U.S. 266, 271 (2000); *Terry*, 392 U.S. at 21.

the unusual activity, and some indication that the unusual activity is related to crime.[11]

When an officer's suspicion of criminal activity arises from an anonymous caller rather than from the officer's own observations, the tip seldom provides reasonable suspicion for an investigatory stop.[12] The tip lacks "sufficient indicia of reliability," such as a suitable level of police corroboration,[13] to establish the "requisite quantum of suspicion."[14] An inverse relationship exists between the reliability of the informant and the amount of corroborated information required to justify the police intrusion; the less reliable the tip, the more information is needed.[15] However, when the informant provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves.[16]

### Analysis

The court of appeals determined that, although there was no testimony establishing a continued conversation between the informant and police dispatch, the very fact that dispatch was able to direct the caller to the scene establishes that the two maintained contact. Therefore, the court concluded, the informant was entitled to a higher degree of reliability than a truly anonymous

---

[11] *Derichsweiler v. State*, ___ S.W.3d ___ (Tex. Crim. App. 2011), 2011 Tex. Crim. App. LEXIS 112, at *22.

[12] *Alabama v. White*, 496 U.S. 325, 327 (1990).

[13] *See Adams v. Williams*, 407 U.S. 143, 147-149 (1972).

[14] *White*, 496 U.S. at 330.

[15] *Id.*

[16] *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

caller.[17] In its opinion, the court compared this case to *Reesing*,[18] *Hawes*,[19] and *Sailo*,[20] in which the respective appellate courts found the anonymous tipsters to be reliable because they placed themselves in a position in which they could be easily identified and held accountable.

This case is distinguishable from those cases, however. This record indicates that the anonymous caller did not provide any identification information to Officer Hurley or to dispatch, did not follow the suspect's vehicle, and was not present at the scene before the stop. While the caller did appear at the scene after the stop, "the reasonableness of official suspicion must be measured by what the officers knew before they conducted their search;"[21] reasonable suspicion cannot be obtained retroactively. In *Derichsweiler*,[22] this Court articulated that, in a reasonableness analysis, any information known to the police dispatcher is imputed to the detaining officer. The record in *Derichsweiler* showed that the police dispatcher remained on the line with the caller, knew the caller's name, and asked the caller to remain at the scene; the caller's reliability was not at issue. Here, the record does not indicate that dispatch knew anything more than the bare bones, somewhat inaccurate, information that was provided to Officer Hurley.

---

[17] *Martinez v. State*, 318 S.W.3d at 28.

[18] *Reesing v. State*, 140 S.W.3d 172, 737 (Tex. App.—Austin 2004, pet. ref'd) (caller identified himself and officer knew that caller remained on cell phone, followed suspect's vehicle, and waited at scene to give statement to police).

[19] *Hawes v. State*, 125 S.W.3d 535, 540 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (officer knew that the caller, a tow-truck driver, was following suspect and observed a tow-truck that matched description given by the caller).

[20] *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd) (citizen stopped to give police information in person, waited on side of road at officer's instruction).

[21] *Florida v. J.L.*, 529 U.S. 266, 271 (2000); *Crain v. State*, 315 S.W.3d 43, 53–53 (Tex. Crim. App. 2010).

[22] *Derichsweiler v. State*, 2011 Tex. Crim. App. LEXIS 112.

Nor does the record reveal how dispatch was later able to direct the caller to the scene. The testimony presented during the hearing on the motion to suppress tends to disallow the inference that the caller maintained contact throughout. It may be that the two maintained contact, but that would have required the caller, who clearly did not follow appellant's vehicle, to remain on the line for well over seven minutes, the time between the initial dispatch and Officer Hurley's request that the caller go to the scene. It may be that dispatch obtained the caller's number from caller ID.[23] However the second contact was made, the caller's identifying information was not revealed before the stop, so at that time, the caller was anonymous, and the tip should have been accorded the reliability that accompanies that status.

Officer Hurley had neither specific, articulable facts nor the necessary level of police corroboration that is required to produce reasonable suspicion and thereby warrant an investigative detention. The facts must show that an unusual activity occurred, the unusual activity is related to a crime, and the detained person had some connection to the unusual activity.[24] Here, the unusual activity reported was that, late at night, a blue Ford pickup truck stopped at the intersection of 17th and Main Street, put two bicycles into the bed of his truck, and left the area going west. This activity was unusual, and the officer's conclusion, that this act was "suspicious," was a reasonable one given the officer's experience and the time of day at which the activity took place.[25]

However, the court of appeals made the conclusory determination that the unusual activity

---

[23] *Martinez v. State*, 318 S.W.3d 24, 31 (Tex. App.—San Antonio (2009), pet. granted) (Simmons, J., dissenting).

[24] *Derichsweiler*, 2011 Tex. Crim. App. LEXIS 112, at *22.

[25] Appellant argues that the court of appeals erred in considering the time of day as there was no evidence as to when the alleged incident occurred. The record supports a reasonable inference on the part of the officer that the incident occurred just prior to the anonymous call.

was related to criminal activity by stating that Officer Hurley considered the call to be a report of a theft. As the record indicates, there was neither a complainant nor a report of stolen bicycles. The anonymous caller did not report contextual factors that reasonably connected the unusual activity to a theft, such as witnessing the suspect use bolt cutters to cut a bike lock or stating that the bikes were taken from someone's garage. More than the officer's opinion that an activity is "suspicious" was needed to relate the activity to a criminal act.[26]

Finally, Officer Hurley had very little information, corroborated or otherwise, to connect appellant to the unusual activity other than the fact that appellant was driving a Ford pickup truck, similar in color to the described truck, close to the time that the unusual activity occurred, and within three quarters of a mile west of the reported incident.[27] Even though Officer Hurley was informed that the alleged suspect was male, he testified that he would have pulled over a Ford pickup truck driven by a woman. Before he approached the truck after the stop, Officer Hurley did not see any bicycles in the bed of appellant's truck, nor did he have any other reason to stop the truck. The specific, articulable, corroborated facts known by the officer at the time of the stop were minimal.

In this court's recent decision in *Derichsweiler*,[28] an informant and his wife reported that a man they did not know pulled his car beside theirs in a McDonald's drive-through lane, stared at them grinning, and lingered there for between thirty seconds to a minute before the man drove on.

---

[26] *See J.L.*, 529 U.S. at 272 ("reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality . . .."); *U.S. v. Benavides*, 291 Fed. Appx. 603, 606 (5th Cir. 2008) (tip that pickup truck carrying wooden crates in a non-warehouse area and two individuals loading unknown cargo was not specific assertion of illegality).

[27] This Court has viewed the video recording of the stop in question, which was made by Officer Hurley's dashboard camera and admitted into evidence. We note that, during Officer Hurley's pursuit of appellant's truck and the subsequent stop, several other dark-colored pickup trucks drive through this area.

[28] *Derichsweiler v. State*, 2011 Tex. Crim. App. LEXIS 112.

The man returned, and the grinning and staring occurred twice more during their wait in the drive-through lane. They felt intimidated and threatened, so they called 911 and reported the encounter. They provided the dispatcher with their names, a description of the offending car, the license plate number of the car, and the suspicious behavior. The dispatcher asked them to remain on the scene, and shortly thereafter an officer arrived to speak with them and get their contact information. Meanwhile the stranger left the McDonald's parking lot and engaged in similar conduct near cars in the adjacent Wal-Mart parking lot.

At trial, the testifying officer noted that the only information that he had was the make, model, color, and license plate of the vehicle, and that it was circling the parking lot of Wal-Mart and McDonald's. This Court held that, although the information provided need not lead to the conclusion that an identifiable penal-code offense has occurred, the information must still be sufficiently detailed and reliable to support the reasonable suspicion that criminal activity is about to occur.

Even with the information known to both the officer and dispatcher, as well as having a known source for the information, this Court declared that the case in *Derichsweiler* was "admittedly a close call."[29] Here, Officer Hurley had significantly less, and less reliable, information: a minimal, somewhat inaccurate description of the suspect vehicle, an anonymous caller, a larger search area, and no suspicious behavior observed by the officer.

## Conclusion

Based on our review of the totality of the circumstances, including the unknown reliability of the anonymous caller and the lack of specific, articulable facts suggesting that criminal activity

---

[29] *Id*. at *25.

was afoot, we find that Officer Hurley's investigatory detention of appellant was not supported by reasonable suspicion. The court of appeals erred in affirming the trial court's judgments. We reverse the judgments of the court of appeals and remand the causes to that court for further proceedings consistent with this opinion.


Delivered: June 29, 2011
Publish