TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00826-CR

NO. 03-11-00829-CR






Van Jackson, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. D-1-DC-10-207456 & D-1-DC-10-207444, 

HONORABLE CLIFF BROWN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


Appellant Van Jackson was convicted by a jury of aggravated robbery and evading
arrest. See Tex. Penal Code Ann. §§ 29.03(a)(2), 38.04(a) (West 2011). After finding that Jackson
had previously been convicted of two sequential felonies, the jury assessed punishment at forty-four
years' imprisonment for aggravated robbery and fifteen years' imprisonment for evading arrest. See
id. §§ 12.42(d), .425(b) (West Supp. 2012). On appeal, Jackson claims that (1) the trial court erred
in failing to instruct the jury on the lesser-included offense of theft, (2) the trial court erred in
denying his motion to suppress statements he made to investigators, and (3) the evidence is
insufficient to prove that he had been convicted of two previous felonies. We affirm the judgments
of the trial court.


BACKGROUND

 On the morning of December 10, 2011, Ricardo Rivas left a friend's party in Austin
to return to his parked car. (1) Rivas unlocked his car, sat in the driver-side seat, and looked for his
cell-phone charger. As he was looking for the charger, a man, later identified as Jackson, opened
the passenger-side door and sat in Rivas's car. According to Rivas, Jackson pointed a knife at
Rivas's stomach and said "[D]o you see this? . . . [W]ell, start the car and start driving." Rivas, was
scared that Jackson would hurt him, so he started his car and began driving while Jackson directed
him on where to go.

 During this drive, Jackson told Rivas to "give him some money." Rivas told Jackson
that he did not have any money with him, but that he could go to an ATM and withdraw some
money. Jackson told Rivas to go to an ATM, and Rivas told him that the closest ATM for his bank
was downtown. Jackson did not want to go downtown, but in order to prove to Jackson that the
nearest bank was downtown, Rivas gave Jackson his cell phone and told him "you can look it up."
Jackson took the phone and put it in his pocket. Jackson also took Rivas's garage-door remote from
the dashboard and placed it in his pocket. During the drive, which lasted approximately twenty to
thirty minutes, Rivas perceived that Jackson was agitated and nervous, and Rivas continually tried
to keep Jackson calm.

 Jackson ultimately agreed to go downtown, and Rivas parked his vehicle outside of
his bank. That particular bank did not have a drive-through ATM, and Rivas told Jackson that he
would have to go inside the bank to use the ATM. Jackson replied "[O]kay, but don't do anything
stupid." Rivas went into the bank while Jackson remained in the car. Rivas began getting money
from the ATM, but once he realized he was no longer in danger, he got the attention of a security
guard and told him that Jackson was trying to rob him. Rivas could see Jackson through the bank's
windows, and once Rivas began talking to the guard, Jackson moved into the driver's seat and
"took off." The guard called 9-1-1, and officers with the Austin Police Department were dispatched
to the scene.

 When the first officer arrived, Jackson was driving away from the bank. The responding
officer waited for back-up from a second patrol car, then activated his emergency lights to signal
Jackson to pull over. Jackson immediately "took off at a high rate of speed" in Rivas's car, and the
officers began their highspeed pursuit of Jackson, which at times reached speeds in excess of ninety
miles per hour. After a five-mile chase, Jackson crashed Rivas's car into a bridge, and then began
to run away on foot. One officer secured the vehicle, at which time he found a partially opened knife
in the passenger-side floorboards. This knife matched Rivas's description of the knife Jackson
used to threaten him. Two other officers apprehended and arrested Jackson. The arresting officers
recovered Rivas's cell phone and garage-door remote on Jackson's person.

 Jackson was injured in the crash, and complained to EMS responders that he had
pain in the upper part of his leg. EMS transported Jackson to Brackenridge Hospital for treatment.
After he was treated, officers transported Jackson back to the police station for questioning. A
detective with the Austin Police Department's robbery unit interrogated Jackson about the robbery.
Jackson confessed to the robbery, stating that he told Rivas "I have a knife. I don't want to hurt you,
so let's go to the bank." The interrogation lasted less than twenty minutes.

 Jackson was subsequently indicted for aggravated robbery and evading arrest. See
id. §§ 29.03(a)(2), 38.04(a). At trial, Jackson pleaded not guilty. The State called fourteen witnesses,
including Rivas, the arresting officers, and the detective who conducted the interrogation. The
State also introduced, over the defendant's objection, the video recording of Jackson's detention and
subsequent confession while he was in the interrogation room. Jackson did not call any witnesses.
The jury convicted Jackson of the offenses as alleged in the indictment. During the punishment
phase, Jackson pleaded "not true" to the enhancement paragraphs, which alleged that he had been
convicted of two sequential felonies. See id. §§ 12.42(d), .425(b) (enhancing punishment for accused
who has been previously convicted of two sequential felonies). The jury found the allegations in the
enhancement paragraphs were true, and assessed punishment at forty-four years' imprisonment for
aggravated robbery and fifteen years' imprisonment for evading arrest. This appeal followed.


DISCUSSION

Lesser-included offense

 In his first issue, Jackson claims that the trial court erred in denying his request for
a jury instruction on the lesser-included offense of theft. See id. § 31.03 (West 2011). We review
a trial court's ruling on a request for a lesser-included-offense instruction for an abuse of discretion.
See Threadgill v. State, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). In order to show that he was
entitled to a lesser-included-offense instruction, Jackson must satisfy the two-prong Aguilar/Rousseau
test. See Hall v. State, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005); see also Rousseau v. State,
855 S.W.2d 666, 672 (Tex. Crim. App. 1993); Aguilar v. State, 682 S.W.2d 556, 558 (Tex. Crim.
App. 1985). The first prong "requires the court to determine whether the lesser offense actually is
a lesser-included offense of the offense charged." Hall, 158 S.W.3d at 473 (internal citations
omitted); see also Tex. Code Crim. Proc. Ann. art. 37.09(1) (West 2006) ("An offense is a lesser-included offense if . . . it is established by proof of the same or less than all the facts required to
establish the commission of the offense charged . . . ."). The second prong "asks whether the record
contains some evidence that would permit a rational jury to find that the defendant is guilty only of
the lesser-included offense." Hall, 158 S.W.3d at 473 (internal citations omitted).

 In this case, the first prong of the Aguilar/Rousseau test is met because theft is
a lesser-included offense of aggravated robbery as charged. See Tex. Code Crim. Proc. Ann. art.
37.09(1). As charged in this case, a person is guilty of aggravated robbery if he "commits robbery"
and, during the commission of the offense, "uses or exhibits a deadly weapon." See Tex. Penal
Code Ann. § 29.03(a)(2) (West 2011). A person commits robbery if "in the course of committing
a theft" and "with intent to obtain or maintain control of the property," he "intentionally
or knowingly threatens or places another in fear of imminent bodily injury or death." See id.
§ 29.02(a)(2) (West 2011). A person commits theft if he "unlawfully appropriates property with the
intent to deprive the owner of the property." See id. § 31.03(a) (West 2011). Robbery includes all
of the elements necessary to prove theft, plus the additional element of threatening or placing
another in fear of imminent bodily injury. Therefore, theft can be a lesser-included offense of
robbery, and by extension aggravated robbery, because theft can be proven by less than all of the
facts required to prove robbery. See Tex. Code Crim. Proc. Ann. art. 37.09(1); see also Jacob v.
Smith, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995) (noting that theft can be lesser-included offense
of aggravated robbery).

 Under the second prong of the Aguilar/Rousseau test, Jackson must show that there
is "more than a scintilla of evidence" that would support a jury reasonably convicting him of theft
and not aggravated robbery. See Goad v. State, 354 S.W.3d 443, 446-47 (Tex. Crim. App. 2011)
(quoting Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). In order to convict Jackson
of theft but not robbery, the jury would have to conclude that Jackson unlawfully appropriated
Rivas's property, but that the evidence was insufficient to prove that Jackson "intentionally or
knowingly" threatened or placed Rivas in "fear of imminent bodily injury." Rivas's testimony
established that Jackson entered Rivas's car, pointed a knife at Rivas's stomach, and demanded that
Rivas give him money. Rivas also stated that he was afraid Jackson would hurt him if he did not
cooperate and that he did not intend to give Jackson his property. This testimony is corroborated by
the uncontroverted evidence that Jackson fled the scene when police arrived, that officers recovered
a partially opened knife matching the description of the knife Rivas claimed Jackson used to threaten
him, and Jackson had Rivas's phone and garage-door opener in his pockets when he was arrested.

 Nevertheless, Jackson claims that the statements he made during his interrogation
contradicted Rivas's testimony and provided sufficient evidence for a jury to reasonably conclude
that Jackson was not guilty of aggravated robbery. Jackson notes that, during his interrogation, he
said that he told Rivas "I don't want to hurt you." Jackson argues that given this statement, the jury
could reasonably conclude that Jackson did not intend to place Rivas in fear of imminent bodily
harm, and thus, the jury could reasonably convict Jackson of theft and not aggravated robbery. He
cites to several cases in which the defendant denied committing an element of the offense, and thus
the appellate court found that there was more than a scintilla of evidence upon which the jury could
reasonably have acquitted the defendant of the offense charged. See, e.g., Bignall, 887 S.W.2d at
23-24 (concluding that defendant entitled to lesser-included-offense charge for theft because some
evidence weapon not used in robbery). That is not the case here.

 In his interrogation, Jackson admitted that he entered Rivas's car, told Rivas "I have
a knife. I don't want to hurt you, so let's go to the bank," told him to drive to an ATM, and then
stole Rivas's car when he saw Rivas talking to a security guard. Thus, Jackson's argument takes his
statement that he did not want to hurt Rivas out of context. The statement occurred during Jackson's
confession to the underlying offense, and therefore this is not a case in which the accused denied
criminal activity. Cf. Bignall, 887 S.W.2d at 23-24 (noting defendant denied using weapon in
robbery); Williams v. State, 314 S.W.3d 45, 51-52 (Tex. App.--Tyler 2010, pet. ref'd) (concluding
that defendant's testimony that he displayed knife after he abandoned theft was more than scintilla
of evidence that he did not commit aggravated robbery). Furthermore, Jackson admitted to having
a knife with him during the theft, though he neither admitted nor denied pointing the knife at Rivas.
Finally, the knife recovered at the scene matched the description of both the knife Rivas claimed that
Jackson pointed at him and the knife Jackson admitted to having when he entered Rivas's car.
Thus, we conclude that Jackson's statement, in context, does not constitute more than a scintilla of
evidence from which the jury could reasonably convict Jackson of theft but not robbery. See Hall,
158 S.W.3d at 473. Therefore, Jackson has failed to satisfy the second prong of the Aguilar/Rousseau
test, and thus the trial court did not abuse its discretion in denying Jackson's request for a lesser-included-offense instruction of theft. Jackson's first point of error is overruled.


Motion to suppress confession

 In his second issue, Jackson argues that the trial court erred in denying his motion to
suppress the statements he made during his interrogation. Jackson claims that his confession was
involuntary under both the Due Process Clause and article 38.21 of the Texas Code of Criminal
Procedure. (2) See U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.21 (West 2006)
(providing that statements "freely and voluntarily made without compulsion or persuasion"
are admissible); see also Oursbourn v. State, 259 S.W.3d 159, 170-72 (Tex. Crim. App. 2008)
(explaining distinction between voluntariness under Due Process Clause and art. 38.21). Generally,
a trial court's ruling on a motion to suppress is reviewed under a bifurcated standard, giving almost
total deference to a trial court's determination of facts or issues that rely upon the credibility of
witnesses, but reviewing pure questions of law and questions that do not depend on a credibility
determination de novo. See Martinez v. State, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011).
Given that Jackson's motion to suppress relied solely on the events within his recorded interrogation,
the trial court made no credibility determinations, and thus, we review the court's ruling de novo.
See id.

 As the court of criminal appeals explained in Oursbourn, whether a statement is
voluntary for purposes of due process and whether it is voluntary under the Texas Code of Criminal
Procedure are related but distinct issues. See 259 S.W.3d at 170-72. Generally, a confession is
involuntary under the Due Process Clause only when coercive conduct by the police--including
subjecting an accused to threats, physical abuse, or extended periods of interrogation without rest
or nourishment--is of such a nature that any statement obtained from the accused was likely not of
his own free will. See id. at 170-71. By contrast, a confession is involuntary under the code of
criminal procedure if it was not "freely and voluntarily made without compulsion or persuasion,"
regardless of whether the coercion or persuasion was the result of police overreaching. See Tex.
Code Crim. Proc. Ann. art. 38.21; Oursbourn, 259 S.W.3d at 171-72. Furthermore, under article
38.22, section 6 of the code of criminal procedure, courts may consider factors such as the accused's
youth, intoxication, mental retardation, or other disability in determining whether his statement
was voluntary, even though these issues would be irrelevant to a federal due-process claim.
Oursbourn, 259 S.W.3d at 172-73. Given that this case does not involve a prolonged interrogation,
threats, or physical abuse of the nature prohibited by the Due Process Clause, we will analyze this
case under articles 38.21 and 38.22, section 6 of the code of criminal procedure. See Oursbourn,
259 S.W.3d at 171.

 Under the code of criminal procedure, a confession is involuntary if the confessor
did not make the decision to confess of his own free will. Delao v. State, 235 S.W.3d 235, 239-40
(Tex. Crim. App. 2007); Green v. State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We determine
whether a confession was voluntary based on the totality of the surrounding circumstances under
which it was obtained. Green, 934 S.W.2d at 98; Armstrong v. State, 718 S.W.2d 686, 693 (Tex.
Crim. App. 1985). A confession is involuntary if it was induced by a promise that was "positive,
made or sanctioned by someone in authority, and of such an influential nature that it would cause
a defendant to speak untruthfully." Martinez v. State, 127 S.W.3d 792, 794-95 (Tex. Crim. App.
2004). General statements made to a suspect that a confession may sometimes result in leniency do
not render the confession involuntary. See Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App.
2003). The ultimate question is whether, under the totality of the circumstances, the confessor's
will was overborne. Id. at 855; Armstrong, 718 S.W.2d at 693.

 In this case, the video recording of Jackson's interrogation shows that he was brought
into the interrogation room at 6:00 in the morning after being discharged from the hospital. Jackson
was not wearing a shirt, shoes, or socks. Jackson clearly had a bandage on his chest, presumably for
injuries he sustained when he crashed Rivas's car or during his subsequent arrest. Jackson was left
alone in the interrogation room for approximately one hour before the detective questioned him,
though someone did bring him a shirt after approximately forty-five minutes. Jackson asked for
food on two occasions, but he was told that he would be given breakfast at the jail. After giving
Jackson the required Miranda warnings, the detective told Jackson that "what a judge and jury are
looking for . . . they like to hear 'I'm sorry.'" The detective went on to say that the three questions
that a prosecutor will ask him are is the defendant cooperative, is he honest, and is he sorry. The
detective told Jackson "[T]hat stuff matters," and then proceeded to ask Jackson for his version of
what happened that night. Jackson initially said "nothing" happened, but then said he "got in the
car, . . . told [Rivas] to give me some money, he told me he didn't have none [sic], and I told him
to drive me to the bank." Jackson proceeded to narrate the events of the robbery as outlined above.
This entire interrogation lasted less than twenty minutes.

 Jackson argues that the video proves that he was "fatigued, hungry, injured[,] and
left isolated in a small room for some time" and that the detective induced his confession by
suggesting that he might receive a lighter sentence if he was honest and apologized for robbing
Rivas. However, the detective never made a positive promise to Jackson that he would receive a
benefit by confessing. Rather, he told Jackson that juries want to hear defendants say they are sorry
and that prosecutors want to know if defendants are cooperative, truthful, and apologetic. These
general statements were not enough to render Jackson's statements involuntary. Muniz, 851 S.W.2d
at 254; Vasquez v. State, 179 S.W.3d 646, 656-57 (Tex. App.--Austin 2005), aff'd, 225 S.W.3d 541,
546 (Tex. Crim. App. 2007).

 Furthermore, we cannot say that Jackson's will was overborne by the duration of
his detention or the fact that he lacked clothing and food. See Vasquez, 179 S.W.3d at 656-57
(concluding that statement was voluntary even though interrogation lasted over seven hours, officers
confiscated confessor's shoes, and confessor repeatedly asked for and was denied medication).
Although Jackson was arguably tired during the interrogation, the video shows that he was alert,
coherent, and could answer the detective's questions. The detective's questioning lasted less than
twenty minutes, and at no time was the detective threatening or overbearing. Cf. Mendoza v. State,
88 S.W.3d 236, 236, 238-39 (Tex. Crim. App. 2004) (concluding that evidence that officers cursed
at accused when he requested attorney and assistant district attorney promised to seek reduced
sentence if accused confessed warranted jury instruction on voluntariness of confession). Therefore,
we conclude that Jackson's confession was voluntary, and the trial court did not err in denying
Jackson's motion to suppress the confession. Jackson's second point of error is overruled.

Sufficiency of evidence to prove enhancement

 In his third and final point of error, Jackson claims that the evidence is insufficient
to prove that he had been convicted of two previous consecutive felonies, and thus, his punishment
for these two offenses should not have been enhanced. See Tex. Penal Code §§ 12.42(d), 12.425(b)
(enhancing punishment if defendant previously convicted of consecutive felonies). In reviewing
the sufficiency of the evidence, we determine whether the jury, as the trier of fact, rationally could
have found that the enhancement allegations were true. See Flowers v. State, 220 S.W.3d 919, 923
(Tex. Crim. App. 2007); Littles v. State, 726 S.W.2d 26, 30 (Tex. Crim. App. 1987). We view the
evidence in the light most favorable to the jury's finding. Littles, 726 S.W.2d at 30.

 In order to establish that a defendant has been convicted of a prior offense, the State
must prove beyond a reasonable doubt that "(1) a prior conviction exists, and (2) the defendant is
linked to that conviction." Flowers, 220 S.W.3d at 921-22. "No specific document or mode of
proof is required to prove these two elements." Id. (noting that "[j]ust as there is more than one way
to skin a cat, there is more than one way to prove a prior conviction."). If, as here, the State seeks
to prove the prior conviction through documents, the documents must contain "sufficient information
to establish both the existence of a prior conviction and the defendant's identity as the person
convicted." Id. (citing Doby v. State, 454 S.W.2d 441, 413-14 (Tex. Crim. App. 1970)). Proof of
previous conviction is like a "jigsaw puzzle" in which individual pieces are usually meaningless,
but "'when the pieces are fitted together, they usually form the picture of the person who'" was
previously convicted. Id. at 923 (quoting Human v. State, 749 S.W.2d 832, 835-36 (Tex. Crim. App.
1988) (op. on reh'g)).

 In this case, the State introduced certified copies of two records from the Texas
Department of Criminal Justice which allegedly correspond to Jackson's two prior convictions.
These records, commonly referred to as "pen packets," contain certified copies of the judgments of
conviction as well as separate photographs and fingerprints taken from the prisoner when he was
incarcerated for each offense. (3) See id at 923 n.14 (explaining admissibility of pen packets). The
beginning of each pen packet contains an affidavit stating that the packets are true and correct copies
of the department of criminal justice's records. These affidavits list the inmate's name as "Jackson,
Van Aleric" and list the cause number for his conviction as well as his unique inmate identification
number assigned to him by the department of criminal justice.

 Jackson claims that the pen packets are insufficient to establish that he was previously
convicted of the offenses depicted in the pen packets. Specifically, he asserts that the pictures and
fingerprints taken of the inmate do not contain references to the cause number for the corresponding
convictions, and thus the jury could not reasonably conclude that he is the individual convicted for
the underlying offense. However, both the photographs and the fingerprint cards within each pen
packet contain Jackson's name and inmate number assigned to him by the department of criminal
justice when he was incarcerated. As previously stated, the affidavit contained within each pen
packet lists both Jackson's department of criminal justice identification number and the cause
number from his conviction. These numbers are identical to the numbers on the various documents
within the pen packet, and thus the affidavit sufficiently links the certified copies of Jackon's
convictions with his photograph and fingerprint card. See id. at 923; see also McGarity v. State,
No. 04-10-00112-CR, 2011 Tex. App. LEXIS 1297, at *3-6 (Tex. App.--San Antonio Feb. 23,
2011, no pet.) (concluding that affidavit listing cause number and prison intake number sufficient
to link judgment of conviction and fingerprint card). Considering the evidence in the light most
favorable to the jury's finding, we conclude that the evidence is sufficient for the jury to find the
enhancement paragraphs were true beyond a reasonable doubt. Littles, 726 S.W.2d at 30. Jackson's
third point of error is overruled.


CONCLUSIONHaving overruled all of Jackson's issues on appeal, we affirm the judgments of
conviction.

 __________________________________________

 Diane M. Henson, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed: October 5, 2012

Do Not Publish
1. The facts recited herein are taken from the testimony and exhibits admitted at trial.
2. Jackson acknowledges that he received the mandatory Miranda warnings and that the
statutory requirements for use of his oral statement were met. See Miranda v. Arizona, 384 U.S. 436,
468-69 (1966); see also Tex. Code Crim. Proc. Ann. arts. 38.22 § 3(a) (West 2006) (excluding
accused's oral statements made during custodial interrogation unless certain requirements are met).
3. The State introduced expert testimony that the fingerprints in each of the pen packets
matched Jackson's fingerprints. See Blanks v. State, 172 S.W.3d 673, 675 (Tex. Crim. App. 2005)
(noting that expert should match fingerprints in pen packets to defendant).