

# NUMBER 13-13-00107-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ESTEBAN DOLORES JIMENEZ RACERO,          **Appellant,**

**v.**

THE STATE OF TEXAS,          **Appellee.**

### On appeal from the 389th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Esteban Dolores Jimenez Racero was charged with possession of marihuana in a usable amount, more than fifty pounds but less than 2,000 pounds, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(5) (West 2010). After the trial court denied his pre-trial motion to suppress, Racero entered an

open plea of guilty, with no agreement as to punishment. The trial court placed Racero on deferred adjudication community supervision for five years and assessed a $5,000 fine. By one issue, Racero contends that the trial court erred in denying his motion to suppress evidence because the search of his tractor-trailer was an unreasonable search and seizure in violation of the United States and Texas Constitutions. We affirm.

## I. BACKGROUND

At the hearing on Racero's motion to suppress evidence, Ricardo Huerta, lead investigating officer and agent with the Criminal Investigations Division of the Texas Department of Public Safety, testified that on August 30, 2011 at about 10:30 a.m., a border patrol agent reported activity at a warehouse in Edinburg, Texas. According to Agent Huerta, the agent informed him that he had observed several individuals on the loading dock. This information was significant to Agent Huerta because, as he testified, "[t]his particular warehouse, in the past, at least nine times—and I made sure I was clear on—nine times out of that warehouse, we have encountered narcotics, large amounts of narcotics being smuggled out of that warehouse." Agent Huerta testified that the facility is not in constant operation; instead, the warehouse operates "[w]hen there's drugs," when they are waiting to make a "drug offload."

After receiving the information about the reported activity at the warehouse, Agent Huerta set up surveillance and watched the premises for two days. During the first day, Agent Huerta and at least three other agents observed pallets and cardboard bins being unloaded from a vehicle. The next day, one of the agents observed three vehicles drive into the facility before sunrise. The drivers turned their vehicles' lights off before entering

2

the warehouse. Agent Huerta testified that this occurrence "was a little bit more suspicious." Later that morning, two men, identified as co-defendants in this case, arrived in a vehicle. They took a forklift from an adjacent warehouse to the loading dock. Later the agents observed Racero's tractor-trailer backed up to the dock. Agent Huerta agreed on cross-examination that this was the first time he had seen Racero and his vehicle. According to Agent Huerta, that morning they also observed the two co-defendants loading several cardboard boxes—four bins—into Racero's tractor-trailer. Agent Huerta agreed that the boxes appeared to be those he had seen on the loading dock the day before. After the tractor-trailer was loaded, Racero got back in his vehicle and departed. The two co-defendants left in their vehicle.

Trooper Orlando Olivarez, a Highway Patrol officer, also testified for the State. According to Olivarez, Agent Danny Martinez with the Narcotics-Criminal Investigations Division contacted him, advised him that they were in the process of an investigation, and requested that he make a stop on a tractor-trailer. Because he knew that Agent Martinez worked in the narcotics division, Trooper Olivarez understood that he was making the stop for an investigation of narcotics or criminal activity. Trooper Olivarez testified that he stopped Racero's vehicle because it was the "topic of an investigation."[1] According to Trooper Olivarez, Racero appeared nervous when he started interviewing him; he was not making sense and was talking to himself during the interview. The narcotics agents arrived to take over the investigation, and Trooper Olivarez and the agents obtained

---

[1] Trooper Olivarez also testified that he stopped Racero's tractor-trailer because the driver, Racero, committed the traffic offense of following too close. At the suppression hearing, the State conceded "that the stop for following too closely was bad." The State does not urge following too close as a basis for the stop on appeal, and we need not address it further. *See* TEX. R. APP. P. 47.1.

3

Racero's verbal consent to search his vehicle. The agents discovered approximately 750 pounds of marijuana concealed under watermelons in the trailer. Trooper Olivarez testified that he then placed Racero under arrest.

After the close of evidence and argument by counsel, the trial court denied Racero's motion to suppress evidence. Racero challenges the trial court's denial of his motion to suppress by ordinary appeal from the trial court's written order that deferred adjudication of guilt and imposed community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(j) (West Supp. 2011); *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's denial of a defendant's motion to suppress under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007). When the trial court does not enter findings of fact, we assume the court made implicit findings of

4

fact supporting its ruling as long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc).

> Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. It also looks to the totality of the circumstances . . . . [T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.

*Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011) (internal citations and quotations omitted). In short, this is an objective standard, referred to as "the 'collective knowledge' doctrine, in which several officers are cooperating and their cumulative information may be considered in assessing reasonable suspicion or probable cause." *State v. Duran*, 396 S.W.3d 563, 569 (Tex. Crim. App. 2013) (citing *Derichsweiler*, 348 S.W.3d at 914–15). This doctrine considers whether the totality of the circumstances provide an objective justifiable basis for the stop. *See Derichsweiler*, 348 S.W.3d 914–15.

### III. DISCUSSION

By a single issue on appeal, Racero challenges the validity of the stop and detention of his tractor-trailer. Racero argues that the warrantless stop was illegal because there was no reasonable suspicion that he engaged in criminal activity. He contends that the State's reasoning that the evidence rises to the constitutional level of

reasonable suspicion is flawed because: (1) the State's evidence was not credible and was not sufficient to establish reasonable suspicion; (2) the State failed to link Racero to any criminal activity; and (3) assuming that the investigative detention was illegal, Racero's consent was not voluntary. The State argues that the traffic stop was justified "on reasonable suspicion of criminal conduct based on the observations made of activity at the warehouse at which the trailer was loaded and the knowledge of the officers as to the use to which that particular facility had been and was put." We agree with the State.

In this case, the unchallenged and uncontradicted testimony at the suppression hearing established that agents observed activity at the facility, specifically the unloading of pallets and cardboard bins at a warehouse in the facility. On the second day of the observed activity, agents saw three vehicles drive into the facility at 6:30 a.m. and turn their lights off before entering the warehouse. Later that same day, Racero arrived with his tractor-trailer. Men loaded Racero's tractor-trailer, and Racero departed from the warehouse at the facility. Agents had encountered large amounts of narcotics being smuggled out of that particular warehouse on at least nine prior occasions. The facility was not operated continuously; it was used only during drug transport operations. An agent advised a trooper that they were in the process of an investigation and asked him to stop a tractor-trailer. The trooper knew that the agent worked in the narcotics division and that he was making the stop for an investigation of narcotics or criminal activity. He knew that Racero's vehicle was the "topic of an investigation."

Viewing the evidence supported by the record in the light most favorable to the trial court's denial of Racero's motion, implying all findings necessary to support the ruling,

6

and considering the several cooperating officers and their cumulative information, *see*
*Duran*, 396 S.W.3d at 569 (citing *Derichsweiler*, 348 S.W.3d at 914–15); *Stevens*, 235
S.W.3d at 740; *Ross*, 32 S.W.3d at 855, we conclude that the totality of the circumstances
provided an objective justifiable basis for the stop. *See Derichsweiler*, 348 S.W.3d
914–15. Accordingly, in this challenge to the trial court's denial of Racero's motion to
suppress, giving almost total deference to a trial court's determination of historic facts and
mixed questions of law and fact that rely upon the credibility of a witness, but applying a
de novo standard of review to pure questions of law and mixed questions that do not
depend on credibility, we uphold the trial court's ruling because it is reasonably supported
by the record and is correct under the "collective knowledge" doctrine. *See Martinez*,
348 S.W.3d at 922–23; *Stevens*, 235 S.W.3d at 740. We overrule Racero's sole issue.[2]

## IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 5th
day of September, 2013.

---

[2] Having concluded that the stop was valid, we need not reach Racero's arguments regarding consent as they are not dispositive of this appeal. *See id.* at R. 47.1.