**Affirmed and Opinion Filed March 24, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00303-CR

### ESTEBAN JIMENEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82506-2011**

## MEMORANDUM OPINION

Before Justices Francis, Brown, and Holcomb[1]
Opinion by Justice Holcomb

Esteban Jimenez was convicted of the murder of Jesus Contreras Saldana after the jury

rejected the lesser-included offense of aggravated assault. The trial judge sentenced appellant to

thirty-eight years' imprisonment. In his sole issue on appeal, appellant contends the trial court

erred by admitting State's Exhibit no. 53, appellant's first recorded statement, into evidence

because the statement was "insufficiently *Mirandized*." We affirm the trial court's judgment.

### BACKGROUND

On September 10, 2011, McKinney police officers responded to a 911 call about a

stabbing at a local day-labor gathering location. They arrived within minutes and found Saldana

bleeding from stab wounds to his body. Saldana was transported by helicopter to Parkland

---

[1] The Hon. Charles R. Holcomb, Retired Judge, sitting by assignment.

Hospital where he later died of multiple wounds. Officers recovered a gray shirt at the scene and formed a perimeter around the area. One officer encountered appellant running shirtless out of a wooded area. When appellant saw the police, he surrendered.

Alfredo Salinas testified that he, Saldana, and other men were hanging out at the location, which was next to a convenience store, talking and drinking beer. Appellant approached the group and Saldana confronted appellant about a bicycle appellant had sold that Saldana had let appellant use. Saldana wanted the bicycle back. Appellant offered Saldana the $20 appellant had received for the bicycle, but Saldana refused it and said he wanted the bicycle. Appellant and Saldana continued to argue, then appellant got angry and wanted to fight. Appellant said "come on, come on, let's throw punches, come on." The other men told Saldana to leave, so Saldana walked away and sat on a bench.

Later, Saldana returned to the group. He and appellant began arguing again. Appellant repeated that he wanted to fight, and he pushed Saldana. The two men then started punching each other. Salinas testified appellant was the aggressor. Saldana turned away to leave the fight, but appellant pulled out a small knife and repeatedly stabbed Saldana. The onlookers shouted at appellant, so he threw the knife over a fence and ran away. One of the onlookers chased appellant and grabbed his shirt. Appellant escaped by punching the onlooker and taking off his shirt. Salinas called 911.

Appellant was taken into custody shortly after the police arrived and taken to the police station. McKinney Detective Steve Riley conducted a video-recorded interview with appellant. McKinney police officer Jaime Cisneros, a Spanish-speaking officer, translated for appellant. Cisneros testified that he observed Riley advise appellant of the *Miranda* rights and appellant appeared to understand them. Appellant wished to speak to the officers. Under cross-examination, Cisneros agreed he did not expressly ask appellant if he would waive his rights.

–2–

Rather, Cisneros just read them and continued the interview. Cisneros later repeated that appellant appeared to understand his rights when they were read and appeared to want to speak with the officers. Appellant never indicated he did not want to speak with the officers or that he wished to terminate the interview. Cisneros testified State's Exhibit no. 53, the video-recording of the first interview with appellant, was a true and accurate recording of the interview.

In the first interview, appellant said Saldana had 'kick[ed appellant] in the balls" so appellant "scratched" Saldana with a bottle. Appellant claimed that Saldana took advantage of him because Saldana was big and appellant was small. Appellant claimed Saldana had mistreated him in the past. Appellant also claimed that Saldana tried to take appellant's money before kicking him, and that appellant had tried to call 911 about Saldana's injuries.

When the State moved to introduce State's Exhibit no. 53 into evidence, appellant objected. The trial court removed the jury from the courtroom and allowed appellant to make his objection. Appellant objected to the admission of the exhibit on the basis that, although advised of his rights, appellant was not asked if would give up the rights or would insist on the presence of an attorney. Rather, the rights were simply read to appellant and the officers proceeded to interview him. Appellant claimed "[i]t was an ineffective admonishment of his Constitutional rights, and he did not waive those rights as he should have." When asked if he was asserting his federal or state constitutional rights or his statutory rights, appellant specifically limited his complaint to the "Federal Constitutional right." The trial court stated on the record that based on *Berghuis v. Thompkins*,[2] an affirmative waiver is not necessary and that he must review the interview as a whole to determine whether there were improper interrogation techniques. The trial court further stated that he had not heard "anything yet that would indicate to [the judge] that this was coercive, just a lack of an affirmative waiver." With that as the basis of appellant's

---

[2] *Berghuis v. Thompkins*, 560 U.S. 370 (2010).

objection, the trial court overruled it. The court asked appellant if he had anything else, to which appellant responded no. The trial court admitted State's Exhibit no. 53 into evidence.

Based on the interview, officers searched the area for a broken bottle, but could not find anything. They later learned from Salinas that appellant had used a knife, and the hospital confirmed Saldana had stab wounds. Officers searched the location again and eventually found a small knife just over the fence of a nearby business. The size of the blade was consistent with Saldana's wounds and there was blood on the tip of the blade. DNA testing of the blood showed it was Saldana's. Officers also checked the 911 call reports and determined that no calls were made about the stabbing other than Salinas's. An autopsy revealed that Saldana had fifteen stab wounds and four shallow cuts around his body. Several wounds had punctured his heart and others had punctured his liver, diaphragm, and small intestines.

After learning Saldana had died, and based on information received from the hospital and Salinas, officers conducted a second interview with appellant. Prior to the second interview, officers again read appellant the *Miranda* warnings in Spanish, and appellant signed a written waiver of his rights. During the interview, appellant again insisted that Saldana attacked him and assaulted him twice before and that appellant had only "scratched" appellant with a broken bottle. When officers informed appellant that Saldana had died and that they had recovered a knife, appellant admitted he had used a knife, saying he used it to cut his nails. Appellant said he threw away the knife so the police "wouldn't find it on me." Appellant repeated that he was defending himself and that Saldana had been the one who attacked appellant. Appellant again claimed he called 911 so Saldana "wouldn't die," and insisted Saldana was not seriously hurt. The video-recording of appellant's second interview was admitted into evidence, without objection, as State's Exhibit no. 54.

–4–

In his sole issue on appeal, appellant contends the trial erred in admitting State's Exhibit no. 53 because the statement was "insufficiently *Mirandized*." Appellant contends the officers did nothing more than read appellant the *Miranda* warning and there was no showing he understood his rights. The State responds that appellant's complaint on appeal does not comport with his objection at trial, the trial court correctly admitted the exhibit, and that any error was harmless because State's Exhibit no. 54, which was appellant's second interview and in which appellant repeated the same story, but also admitted stabbing Saldana with the knife, was admitted into evidence without objection.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion by admitting or excluding evidence only if its decision "lies outside the zone of reasonable disagreement." *See id.*

At trial, appellant claimed he did not affirmatively waive his *Miranda* rights, and clarified that was his only objection. On appeal, appellant contends the record does not show and the trial court did not find that appellant "understood his rights even in part, never mind in full." This complaint does not comport with the objection raised at trial. "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *see also* TEX. R. APP. P. 33.1.

Moreover, assuming appellant preserved his entire complaint, after reviewing the record as a whole, we conclude the trial court did not abuse its discretion in admitting State's Exhibit no. 53. The State had the burden to show by a preponderance of the evidence that appellant knowingly, intentionally, and voluntarily waived his *Miranda* rights. *See Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

"[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at 25. The waiver must be made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

"A valid waiver will not be presumed simply from the silence of the accused after the warnings are given or simply form the fact that a confession was in fact eventually obtained." *Id.* at 24 (quoting *Miranda*, 384 U.S. at 475). However, neither a written nor an oral express waiver is required. *Id*. (citing *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (prosecution need not show express waiver of *Miranda* rights). A waiver need not assume a particular form and, in some cases, can be clearly inferred from the actions and words of the person interrogated. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979). "An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Berghuis*, 560 U.S. at 384.

In determining whether the waiver is valid, the court must consider the totality of the circumstances surrounding the interrogation. *See Joseph*, 309 S.W.2d at 25–26. An implied waiver of one's rights is established upon a showing the accused was given the proper warnings, understood the warnings and their consequences, and made an uncoerced statement. *See Berghuis*, 560 U.S. at 384. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385.

The record shows that appellant, on the video-recording, was advised in Spanish of the *Miranda* warnings. Although appellant was not specifically asked if he wished to waive his rights, Cisneros testified that appellant appeared to understand his rights, indicated he wished to speak with the officers, and gave no indication that he wished to remain silent. The trial court

found that there was no showing of coercion and there is nothing in the record that would lead us to conclude appellant did not understand his rights. *See id.*; *Ripkowski v. State*, 61 S.W.3d 378, 383–85 (Tex. Crim. App. 2001). We further conclude that appellant knew what he was giving up when he chose to speak with the officers. *See Berghuis*, 560 U.S. at 385. Thus we conclude the trial court did not abuse its discretion by admitting State's Exhibit no. 53 into evidence.[3]

Finally, we conclude that any error in the admission of State's Exhibit no. 53 is harmless. It is well-established that any error in the admission of evidence is rendered harmless when substantially the same evidence is admitted elsewhere without objection. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

State's Exhibit no. 54, the video-recording of appellant's second statement to the police, was admitted into evidence without objection. The second statement contained almost the same initial material as the first statement in that appellant was protecting himself from Saldana and that Saldana had previously "taken advantage" of appellant due their differences in size. However, in the second statement, appellant went in to additional detail, admitting he had stabbed Saldana with the knife rather than "scratching" him with the bottle. Therefore, we conclude that substantially the same evidence was admitted without objection through State's Exhibit no. 54; thus any error in admitting State's Exhibit no. 53 was harmless. We overrule appellant's sole issue.

---

[3] Appellant did not file a motion to suppress the statements he made during the first interview. He objected to the admission of the exhibit. Nevertheless, even were we to apply the bifurcated standard of review for reviewing a ruling on a motion to suppress, we would reach the same result. *See Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011).

We affirm the trial court's judgment.

/Charles R. Holcomb/
CHARLES R. HOLCOMB
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47
130303F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ESTEBAN JIMENEZ, Appellant

No. 05-13-00303-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-82506-2011.
Opinion delivered by Justice Holcomb,
Justices Francis and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered March 24, 2014


/Charles R. Holcomb/
CHARLES R. HOLCOMB
JUSTICE, ASSIGNED