

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00814-CR

Jacob Randall **SONGER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law, Kendall County, Texas
Trial Court No. 13-272-CR
Honorable Bill R. Palmer, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  November 25, 2015

AFFIRMED

Jacob Randall Songer was charged with a first offense of driving while intoxicated. After the trial court denied his motion to suppress, Songer entered a plea of no contest. On appeal, Songer challenges the trial court's ruling on his motion to suppress, contending the officer did not have reasonable suspicion to stop him. We affirm the trial court's judgment.

## BACKGROUND

The arresting officer, Deputy Escalante, was the only witness to testify during the hearing on Songer's motion to suppress.[1] The following summarizes Deputy Escalante's testimony regarding the information he possessed and his observations before stopping Songer's vehicle.

On April 18, 2013, Deputy Escalante was dispatched to a McDonald's restaurant at a truck stop in response to a manager's call that a car had hit the building. The manager planned to delay the driver's food order until the police could arrive.[2] Although Deputy Escalante agreed the 911 recording did not contain a description of the vehicle's color, Deputy Escalante testified the dispatcher told him the car was white.

Deputy Escalante arrived at the McDonald's restaurant in less than two minutes, and only one car was in the drive-through. Deputy Escalante testified the car was white.[3] Deputy Escalante further testified there were no other vehicles at the drive-through and only a few vehicles pumping gas at the truck stop because it was 12:23 a.m. Deputy Escalante pulled behind Songer's car and

---

[1] Although Songer's attorney and the prosecutor agreed to play the recording of a 911 call for the trial court, the record does not reflect that the recording was offered or admitted into evidence, and the recording is not contained in the appellate record.

[2] This information was discussed in the record during closing arguments as being contained in the 911 recording:
    [Prosecutor]: Dispatch said that they were going to try and delay his order so he would still be there.
    THE COURT: That was on the tape?
    [Prosecutor]: That was on the — the manager did state that on the —
    THE COURT: Okay.
    [Prosecutor]: — on the 911 call, that they were going to try and delay his order until they got there.
Deputy Escalante appeared to believe the service was being delayed based on the following testimony:
    Q.    Okay. And when you got there, was there a delay — did you have to wait a little —
    A.    I just waited a few seconds. Yes, ma'am.
    Q.    Was the person at the window — was the person at the window waiting to give him his food until —
    A.    That's correct. Yes.
    Q.    Okay. And did you — did dispatch communicate that to you, that they were going to try and hold him there?
    A.    No. I — I don't recall that. I just — after I got dispatched, I just got there and just waited to make contact with the subject. And a few — I don't know — 40 seconds out, I'm guessing, delay to serve the food — just give you the food through the window. When he got the food, he just started moving his car. That's when I initiated the traffic stop.

[3] Deputy Escalante agreed that his report referenced the color of the car as being silver but stated the car was white.

waited until Songer was served his food. After Songer drove a few yards away from the drive-through window, Deputy Escalante stopped him. Deputy Escalante stated he normally would pull over the driver of a vehicle who hit and damaged a building in order to gather more information and determine the reason he hit the building.

### REASONABLE SUSPICION AND STANDARD OF REVIEW

"A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Matthews v.* State, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (internal citations omitted). "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens." *Id.*

In evaluating the totality of the circumstances, we use a bifurcated standard of review. *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). As an appellate court, we "give almost total deference to a trial judge's findings of historical fact and credibility determinations that are supported by the record." *Id.* However, "[w]e review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013) (internal citations omitted).

In order to constitute reasonable suspicion, "[the] facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). "When an officer's suspicion of criminal activity arises from an anonymous caller rather than from the officer's own observations, the tip seldom provides reasonable suspicion for an investigatory stop" because it lacks "sufficient indicia of reliability." *Id.* "An inverse relationship exists between the reliability of the informant and the amount of corroborated information required to

justify the police intrusion; the less reliable the tip, the more information is needed." *Id*. "However, when the informant provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves." *Id*.

In this case, Deputy Escalante was responding to a dispatch based on a 911 call received from the manager of the McDonald's restaurant, who was in a position to be identified and held accountable for the information provided. Accordingly, we conclude the information was reliable. *See Nacu v. State*, 373 S.W.3d 691, 694-95 (Tex. App.—San Antonio 2012, no pet.) (concluding information from restaurant manager, who placed herself in a position to be identified and held accountable for the information she provided, was reliable). The manager reported a car had hit the building which was an unusual occurrence and could constitute a criminal offense. *See* TEX. PENAL CODE ANN. § 28.04(a) (West 2011) ("A person commits an offense if, without the effective consent of the owner, he recklessly damages or destroys property of the owner."); *see also Arguellez*, 409 S.W.3d at 663 (noting "[w]e review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity"). Deputy Escalante arrived at the McDonald's in less than two minutes, and only one car was in the drive-through. The car was white, which was the same color the dispatcher described to Deputy Escalante. Deputy Escalante pulled behind the car and waited several seconds until the driver was served his food. Deputy Escalante stopped the car a few yards away from the drive-through. Based on the foregoing, we hold reasonable suspicion existed because the facts show "unusual activity, some evidence that connects [Songer] to the unusual activity, and some indication that the unusual activity is related to crime." *Martinez*, 348 S.W.3d at 923.

**CONCLUSION**

The trial court's judgment is affirmed.

Marialyn Barnard, Justice

DO NOT PUBLISH