**Opinion issued September 5, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00553-CR

————————————

**DAVID LEROY TAFLINGER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 14**
**Harris County, Texas**
**Trial Court Case No. 1791890**

---

## O P I N I O N

Appellant David Leroy Taflinger moved for en banc reconsideration of this panel's opinion issued on May 9, 2013. We sua sponte withdraw our opinion and judgment of May 9, 2013, and issue this opinion and judgment in their place. Taflinger's motion for en banc reconsideration is rendered moot by our

withdrawing and reissuing our opinion and judgment. *See Poland v. Ott*, 278 S.W.3d 39, 41 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

Taflinger was charged with misdemeanor driving while intoxicated (DWI). Following the trial court's denial of his motion to suppress, Taflinger pleaded nolo contendere and received a suspended sentence of 180 days in county jail, one year community supervision, and a $400 fine. On appeal, Taflinger argues that the trial court erred by denying his motion to suppress because: (1) the citizen-informant's tip was too conclusory to give rise to reasonable suspicion; and (2) the arresting officer did not have probable cause to stop Taflinger because he did not commit a traffic violation. We affirm.

## Background

At approximately 1:00 a.m. on November 8, 2011, Officer Kenneth D. Troost received a call on his cell phone as he was leaving the parking lot of a Chevron gas station in his patrol car. The call was from Reva Woffard, the gas station attendant on duty at the Chevron. Troost was familiar with this gas station and Woffard because he routinely fueled his patrol car there. Woffard told Troost that a man had just come into the gas station, that he was intoxicated, and that he was getting into a red truck. Troost hung up and immediately pulled around to the back entrance of the gas station. There he saw that the only truck in the parking lot was a red truck, which was headed toward the exit of the gas station. Troost pulled

in behind the truck and observed its driver, Taflinger, exit the Chevron parking lot, cross two lanes of northbound traffic, and turn left without signaling to head southbound on the roadway. Troost stopped Taflinger's vehicle and, following a brief investigation, arrested Taflinger for DWI.

Taflinger was charged with misdemeanor DWI. He filed a motion to suppress alleging that Troost lacked reasonable suspicion to stop him. At a hearing on Taflinger's motion, Troost testified that he stopped Taflinger after he received a call from Woffard and observed Taflinger commit a traffic violation—failing to signal his left turn out of the gas station onto the public roadway. Taflinger argued that Woffard's conclusion that he was intoxicated was unsupported by specific articulable facts necessary to create reasonable suspicion. He also argued that there was no traffic violation because the Traffic Code does not require a person to signal a turn from a private drive onto a public roadway.

The trial court found that Troost had reasonable suspicion to stop Taflinger based on Woffard's report that Taflinger was intoxicated and the existence of exigent circumstances. The trial court also found that Troost had probable cause to stop Taflinger, based on his failure to signal his turn.

**Discussion**

In his two points of error, Taflinger argues that the trial court erred by denying his motion to suppress because: (1) Woffard's tip was too conclusory to

3

give rise to reasonable suspicion; and (2) the arresting officer did not have probable cause to stop Taflinger because he did not commit a traffic violation.

## A. Standard of Review

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we give almost total deference to the trial court's determination of historical facts if supported by the record. *Ford*, 158 S.W.3d at 493. But we review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

**B.    Applicable Law**

A police officer is permitted to stop and temporarily detain a person in order to conduct an investigation if the officer, based on his experience, has a reasonable suspicion that an individual is violating the law. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884–85 (1968); *Ford*, 158 S.W.3d at 492 (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)).  An officer is justified in initiating a traffic stop "if the officer, based upon specific and articulable facts, reasonably surmises that the detained person may be associated with a crime." *Davis v. State*, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992) (citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880).  The officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883). Reasonable suspicion is determined by considering whether the officer had "some minimal level of objective justification for making the stop." *Id.*    Because reasonable suspicion is an objective standard, we disregard any subjective intent of the officer and we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93.

The officer need not personally observe the factual basis giving rise to reasonable suspicion for a traffic stop; rather, under certain circumstances, a stop may be justified if the facts underlying the traffic stop are observed by a civilian-

5

informant. *See Brother v. State*, 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005) (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1923 (1972)). "A citizen's tip may justify the initiation of a stop if the tip contains 'sufficient indicia of reliability'" and the officer corroborates those facts supplied by the citizen-informant. *Nacu v. State*, 373 S.W.3d 691, 694 (Tex. App.—San Antonio 2012, no pet.) (quoting *Arzipe v. State*, 308 S.W.3d 89, 92 (Tex. App.—San Antonio 2010, no pet.)).

A tip is entitled to greater weight when the informant gives a detailed description of the wrongdoing, along with a statement that the informant observed the event firsthand. *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.). "Furthermore, a person who is not connected with the police or who is not a paid informant is considered inherently trustworthy when he advises the police that he suspects criminal activity has occurred or is occurring." *Id.*; *State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.). "[W]hen the informant provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (citing *Brother*, 166 S.W.3d at 257).

The most reliable form of a citizen tip is information given to the officer by a "face-to-face informant who has no other contact with the police beyond

6

witnessing a criminal act." *State v. Griffey*, 241 S.W.3d 700, 704–05 (Tex. App.—Austin 2007, pet. ref'd) (citing *Cornejo v. State*, 917 S.W.2d 480, 483 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). Because of the inherent reliability of such an informant, the information provided by that informant may be sufficient to establish reasonable suspicion without additional corroboration. *See id.* at 705.

"[C]orroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Brother*, 166 S.W.3d at 259 n.5. There is an inverse relationship between the reliability of the informant and the amount of corroboration needed to justify the stop—the less reliable the tip, the more corroborating information is needed. *Martinez*, 348 S.W.3d at 923 (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)).

## C.    Reasonable Suspicion

Taflinger concedes that Woffard's past relationship with the officer qualifies her as a reasonably reliable source of information. But, he argues, the trial court placed too much emphasis on her trustworthiness and ignored the fact that Woffard's tip was not based on specific, articulable facts necessary to justify the stop.

Under Texas law, there is an inverse relationship between the reliability of the informant and the amount of corroboration needed to justify the stop. *See Martinez*, 348 S.W.3d at 923; *Griffey*, 241 S.W.3d at 705. Two cases illustrate this point. In *Stolte*, an officer was informed by his dispatcher that a caller had reported a possible DWI and that the caller was following the suspect. *Stolte*, 991 S.W.2d at 342. The officer was given a description and license plate number of the vehicle and told that the vehicle was traveling westbound and about to exit at Bedford Road. *Id.* The officer confirmed that a vehicle matching the dispatcher's description and license plate number was traveling westbound and was exiting at Bedford Road and then the officer stopped the vehicle. *Id.* The Fort Worth Court of Appeals concluded that, in light of the totality of the circumstances, including the immediate threat to public safety, the officer was justified in initiating an investigatory stop after he confirmed that the vehicle, matching the description and license plate number given, was located where the caller indicated. *Id.* at 343. Therefore, the court held that the information from the unknown caller "was sufficiently reliable to justify the investigative stop and had been adequately corroborated by [the arresting officer] at the time of the detention." *Id.*

Similarly, in *Nacu*, an officer was approached by a manager of a nearby restaurant who told him that a woman had been in the restaurant, she was intoxicated, and she got into a car in the parking lot. *Nacu*, 373 S.W.3d at 692–93.

8

The officer asked the manager to identify the woman and the manager pointed to Nacu's vehicle, which was still in the parking lot. *Id.* at 693. The officer stopped Nacu's vehicle. *Id.* The San Antonio Court of Appeals concluded that there was reasonable suspicion for the stop because the information from the manager was reliable and the officer sufficiently corroborated it. *Id.* at 694–95. The court recognized that the manager's statement that Nacu was intoxicated, when viewed without context, was conclusory. *Id.* at 696. However, the court concluded that the explanation provided by the manager—"that the driver of a vehicle had previously been in her restaurant, was intoxicated, and trying to drive through metal poles too narrow to accommodate a car"—provided the trial court with specific, articulable facts to make an independent determination of whether the detention was objectively reasonable. *Id.*

Here, Troost testified that he was at a Chevron gas station in Kingwood around 1:00 a.m., when he received a call on his cell phone from Woffard, who worked at that Chevron and with whom Troost had spoken hundreds of times. Troost testified that he believed Woffard was reliable and credible and that Woffard informed him that an intoxicated man had just left her store and was getting into a red truck. Troost immediately returned and confirmed that the only truck in the parking lot was a red truck that was pulling up to the exit of the gas station. Troost testified that a matter of seconds passed between the time of

9

Woffard's phone call and the time he identified the red truck. He pulled in behind Taflinger's truck and, rather than stop him solely on reasonable suspicion, he waited to see if Taflinger committed a traffic violation. After observing Taflinger commit what he believed to be a traffic violation, Troost stopped Taflinger and ultimately arrested him.

We conclude, based on the totality of the circumstances, that Woffard's tip and Troost's corroboration, considered together, were sufficient to give Troost reasonable suspicion to stop Taflinger. First, Troost was familiar with Woffard, knew Woffard's first and last name, had spoken with her hundreds of times, and believed her to be reliable and credible. He was also familiar with the gas station where she worked and was at that gas station when he received the call from Woffard. Woffard relayed events that she had witnessed firsthand and gave Troost a description of Taflinger's vehicle. These factors all made Woffard's tip reliable. *See Stolte*, 991 S.W.2d at 342 (finding information received from informant reliable because officer could learn identity of informant who stopped at scene, informant placed himself in position to be held accountable for his intervention by stopping at scene, informant relayed events that he personally witnessed, and informant remained on phone with dispatcher to update and track suspect's location); *see also Truley v. State*, 242 S.W.3d 178, 181–82 (Tex. App.—Fort Worth 2007, no pet.) (concluding that tip from gas station clerk was reliable

10

because officer stopped at gas station frequently, knew clerk's name, clerk was calling from workplace, clerk relayed events she witnessed firsthand, clerk gave officer description and license plate number of vehicle, and there was no information that clerk was paid informant).

Next, because Woffard's tip was reliable, less corroboration was necessary to create reasonable suspicion. *See Martinez*, 348 S.W.3d at 923; *Griffey*, 241 S.W.3d at 705. Here, Troost was at the gas station at the time he received the call, and thus was able to corroborate Woffard's tip within seconds. He observed that the vehicle described by Woffard was in the parking lot and saw that no other vehicle matching that description was there. Troost also observed the vehicle exit the parking lot without signaling. And, while this behavior alone is not indicative of intoxication, it provided a "small additional measure of corroboration" to Woffard's tip that Taflinger was intoxicated. *See Reesing v. State*, 140 S.W.3d 732, 735–37 (Tex. App.—Austin 2004, pet. ref'd) (concluding that appellant's observed behavior in parking lot—pausing in parking lot for what officer considered to be long time absent any traffic and failing to signal turn—"while alone not indicative of intoxication, gave a small additional measure of corroboration to the caller's report" that appellant was intoxicated). Additionally, the suspected offense, DWI, involved an immediate threat and danger to public safety. As the court noted in *Stolte*, "it would be wholly *unreasonable* . . . to

11

require a police officer to 'corroborate' an informant's tip by waiting for the suspect to swerve out of his lane or otherwise jeopardize the safety of other drivers." *Stolte*, 991 S.W.2d at 343 n.4 (emphasis in original).  Having considered the totality of the circumstances, including the reliability of Woffard's tip, Troost's corroboration, and the immediate threat and danger that an intoxicated driver poses to public safety, we hold that Troost was objectively justified in initiating an investigatory stop.  *See id.* at 343 (holding officer justified in conducting investigatory stop, in light of immediate threat to public safety created by intoxicated driver, after he located vehicle as described by informant); *see also Nacu*, 373 S.W.3d at 695 (reasonable suspicion where officer testified that manager appeared trustworthy and that he verified tip from manager by confirming there was restaurant in vicinity and locating vehicle described by manager).

Finally, Taflinger contends that even if Woffard's tip was reliable and was corroborated by Troost, her tip did not justify the stop because her statement that Taflinger was "intoxicated" is purely conclusory.  In support of this assertion, Taflinger relies primarily on *Ford v. State*, in which the Court of Criminal Appeals held that the arresting officer's conclusory statement that the defendant was "following too close" did not establish reasonable suspicion for an investigatory stop.  *Ford*, 158 S.W.3d at 493–94.  The Court explained that the record revealed "an absence of any facts allowing an appellate court to determine the

12

circumstances upon which [the arresting officer] could reasonably conclude that Ford actually was, had been, or soon would have been engaged in criminal activity." *Id.* at 493. Without specific, articulable facts, the Court had no means to assess whether the arresting officer's opinion that Ford was following too closely was objectively reasonable. *Id.*

We note first that *Ford* did not involve a tip from an informant and, therefore, the Court of Criminal Appeals did not conduct the analysis we have applied here. Second, in *Ford*, the officer's opinion that the appellant was "following too closely," which was held to be an "ineffective substitute[] for specific, articulable facts," was the only testimony offered to establish reasonable suspicion. *Ford*, 158 S.W.3d at 493. Here, in contrast, Woffard's statement that Taflinger was intoxicated, while arguably conclusory, was supported by other evidence that would allow a reviewing court to determine whether Troost's detention of Taflinger was objectively reasonable—Troost's testimony that, upon receiving this information, he immediately pulled into the gas station parking lot, identified the red truck, and observed Taflinger exiting the parking lot and crossing two lanes of traffic without signaling. *See Nacu*, 373 S.W.3d at 696 (concluding that informant's statement that appellant was "too intoxicated to drive," while standing alone appeared conclusory, when viewed in context with informant's other statements that appellant had just been in her restaurant and was trying to

drive through metal poles too narrow to accommodate a car, gave officer specific, articulable facts that would allow reviewing court to determine whether appellant's detention was objectively reasonable).

We overrule Taflinger's first point of error. Because we have found that there was reasonable suspicion for the stop, we need not consider Taflinger's second point of error.

## Conclusion

We affirm the trial court's judgment. We dismiss all pending motions as moot.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.
Publish. TEX. R. APP. P. 47.2(b).
Justice Sharp, dissenting. Opinion to follow.

14