**Opinion issued February 5, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00546-CR

———————————

**STEVEN GOLDEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1833897**

---

## MEMORANDUM OPINION

Following the denial of his pre-trial motion to suppress, Steven Golden pled

nolo contendere to the misdemeanor offense of driving while intoxicated and the

trial court assessed punishment at thirty days in county jail. On appeal, Golden

argues that the denial of his motion to suppress was an abuse of discretion because

the detaining officer did not personally observe anything that would give rise to reasonable suspicion that a crime was afoot and the citizen informant's information was conclusory and lacked sufficient articulable facts of criminal activity. We affirm.

## Background

Kevin Polasek was leaving a home improvement store in Houston, Texas, one afternoon when he saw a truck driving erratically in the store's parking lot. According to Polasek, the truck's driver, who was later identified as Golden, appeared to be confused and was having trouble finding the lot's exit. Polasek followed Golden's truck as it exited the parking lot and turned onto the northbound highway. Golden immediately made two u-turns which, combined with his difficulty navigating the parking lot, made Polasek suspect that Golden was driving while intoxicated. At that point, Polasek called 911, identified himself to the dispatcher, and reported his observations along with a description of Golden's truck and its license plate number.

Polasek stayed on the phone with the dispatcher and continued to follow Golden's truck in his own vehicle. At one point, Golden stopped his truck in the middle of the road at a green light, and when Polasek pulled up next to him, he saw that Golden appeared to be asleep behind the wheel. After Golden drove off, Polasek followed him and watched as Golden drove to a gas station, hitting the

curb as he pulled into the parking lot. Polasek parked nearby and watched Golden, who appeared to be having difficulty getting the gas pump to work. Polasek also notified the 911 dispatcher of Golden's location, and several police units arrived at the gas station within five to ten minutes.

Harris County Sheriff Deputies M. Nguyen and W. Trejo responded to Polasek's call and observed Golden at the gas station just as Polasek had told the dispatcher he would be. The information that Polasek had given to the dispatcher, along with Polasek's name, was relayed to the deputies via their call slips. Deputies Nguyen and Trejo noted that Golden's vehicle matched Polasek's description, a white truck with a stripe, and the exact license plate number.

Polasek remained in the parking lot and watched as the deputies arrived, assessed the situation, and watched Golden get into his truck and start the engine. At that point, Deputy Nguyen initiated a traffic stop before Golden could exit the parking lot. After the deputies investigated and arrested Golden, Polasek spoke with Deputy Trejo and gave a statement confirming what he had seen.

## Reasonable Suspicion

Golden argues that the trial court abused its discretion when it denied his motion to suppress because the information that Polasek gave to the dispatcher was conclusory and lacked sufficient articulable facts of criminal activity, and Deputy

Nguyen did not personally observe anything that would give rise to reasonable suspicion that a crime was afoot.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Under this standard, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* When a trial court makes written findings of fact, as it did in the instant case, a reviewing court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. *See id.* We defer to the trial court's determination of historical facts if the record supports them. *See id.* We review a trial court's application of the law of search and seizure to the facts de novo. *Id.* A trial court's ruling will be sustained if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447–48 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

## B. Applicable Law

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. AMEND. IV.[1] Brief investigative

---

[1] When, as here, an appellant does not separately brief state and federal constitutional claims, we assume that he claims no greater protection under the state constitution than that provided by the federal constitution. *See Reed v. State*,

stops, however, such as the traffic stop in this case, are permitted if the law enforcement officer has a reasonable suspicion that some crime was, or is about to be, committed. *See Navarette v. California*, 134 S. Ct. 1683, 1687 (2014). Reasonable suspicion exists when a peace officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.*; *see Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Courts determine if reasonable suspicion exists by objectively viewing the totality of the circumstances. *Navarette*, 134 S. Ct. at 1687; *Derichsweiler*, 348 S.W.3d at 914.

Whether reasonable suspicion exists to justify a stop depends "upon both the content of the information possessed by police and its degree of reliability." *Navarette*, 134 S. Ct. at 1685 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)). The content of the information possessed by the police includes the totality of the information known collectively to the cooperating peace officers, including 911 dispatchers. *Derichsweiler*, 348 S.W.3d at 915 (explaining that 911 dispatcher is regarded as "cooperating officer" for purposes of determining reasonable suspicion); *see also Martinez v. State*, 348 S.W.3d 919,

---

308 S.W.3d 417, 419 n.3 (Tex. App.—Fort Worth 2010, no pet.); *Varnes v. State*, 63 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Therefore, we will analyze Golden's claims under the Fourth Amendment of the United States Constitution, following guidelines set by the United States Supreme Court in interpreting the Fourth Amendment. *See State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998).

924 (Tex. Crim. App. 2011) (stating that "any information known to the police dispatcher is imputed to the detaining officer").

It is well established that a detaining officer need not personally observe the factual basis giving rise to reasonable suspicion for a traffic stop; rather, a stop may be justified if the facts underlying the traffic stop are observed by another person, including a civilian informant. *See Navarette*, 134 S. Ct. at 1687–88; *see also Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) ("The factual basis for stopping [an individual] need not arise from the officer's personal observation, but may be supplied by information acquired from another person."). The amount and detail of corroboration of the information contained within a citizen informant's tip can support a less reliable report. *Martinez*, 348 S.W.3d at 923; *Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The less reliable the tip, the more corroborating information the police need to justify the stop. *Martinez*, 348 S.W.3d at 923 (citing *White*, 496 U.S. at 330); *Taflinger*, 414 S.W.3d at 885; *see Navarette*, 134 S. Ct. at 1688 (discussing effect of corroboration on reliability of anonymous tip).

Courts have recognized several indicia of reliability with respect to tips from a citizen informant. For example, a tip from a citizen informant who identifies himself and holds himself accountable for the veracity and accuracy of his information may be regarded as reliable. *Derichsweiler*, 348 S.W.3d at 914–15;

*Hawes v. State*, 125 S.W.3d 535, 538 (Tex. App.—Houston [1st Dist.] 2002, no pet.). An anonymous tip, on the other hand, rarely rises to the level of suspicion required to justify a detention without sufficient police corroboration. *White*, 496 U.S. at 329, 110 S. Ct. at 2416.

The citizen informant's firsthand account and detailed description of wrongdoing increases the reliability of his information. *Hawes*, 125 S.W.3d at 539; *see also Navarette*, 134 S. Ct. at 1689 (stating that contemporaneous eyewitness reports of suspected criminal activity have "long been treated as especially reliable"). Courts consider an informant who is not connected with the police inherently trustworthy when advising the police of suspected criminal activity. *Taflinger*, 414 S.W.3d at 885. The Supreme Court has recognized that use of the 911 emergency system, which "has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity," is another indicia of reliability. *Navarette*, 134 S. Ct. at 1691–92.

## C.    Analysis

Golden argues that the trial court abused its discretion when it denied his motion to suppress because Polasek's tip failed to establish reasonable suspicion because Polasek merely claimed that he thought that Golden was driving while intoxicated and he did not give specific articulable facts of Golden's criminal activity. Golden further contends that Deputy Nguyen could not rely on Polasek's

7

tip, and therefore, he could only have lawfully detained Golden if the officer personally observed something that would give rise to reasonable suspicion that a crime was afoot, which the officer admits he did not.

Here, Polasek testified that he became concerned that Golden was driving while intoxicated because he watched Golden driving erratically in the store's parking lot only to immediately make two successive u-turns on the highway once he got onto the road. He then followed Golden in his own vehicle and immediately called 911 to report his suspicions and Golden's driving to law enforcement. Polasek, who was on the phone with the 911 dispatcher from the time he followed Golden's vehicle out of the store parking lot until Golden was stopped by Deputy Nguyen, testified that he contemporaneously relayed his observations of Golden's erratic driving to the 911 dispatcher. Specifically, Polasek told the dispatcher that Golden could not drive in a straight line, stopped at green lights, fell asleep behind the wheel, and drove his vehicle up on the curb when he pulled into the gas station parking lot. Polasek also gave the dispatcher his name and a description of his vehicle, along with a description of Golden's vehicle (white truck with a stripe) and its complete license plate number. Deputy Nguyen testified that the information that Polasek provided to the dispatcher was relayed to him and the other officers via their call slips.

This case is similar in many ways to the recent Supreme Court decision in *Navarette*. In that case, a 911 caller reported that a driver in a silver Ford 150 pickup ran her vehicle off the roadway near a specific mile marker five minutes earlier while driving southbound on Highway 1, and she provided the truck's license plate information. *Navarette*, 134 S. Ct. at 1686–87. Law enforcement detained the pickup truck driver less than twenty minutes later on southbound Highway 1, as reported by the 911 caller. *Id.* The Supreme Court held that the caller's tip contained adequate indicia of reliability to support reasonable suspicion because the content of the tip indicated that it was based on eyewitness knowledge, was contemporaneously made, and was made to the 911 emergency system. *Id.* The Supreme Court also found persuasive the fact that the 911 caller in *Navarette* reported

> more than a minor traffic infraction and more than a conclusory allegation of drunk or reckless driving. Instead, she alleged a specific and dangerous result of the driver's conduct: running another car off the highway. That conduct bears too great a resemblance to paradigmatic manifestations of drunk driving to be dismissed as an isolated example of recklessness. Running another vehicle off the road suggests lane-positioning problems, decreased vigilance, impaired judgment, or some combination of those recognized drunk driving cues.

*Id.* at 1691. The Court reasoned that "[r]easonable suspicion depends on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act[]' [and u]nder that commonsense approach,

9

we can appropriately recognize certain driving behaviors as sound indicia of drunk driving." *Id*. at 1690.

Polasek provided the 911 dispatcher with specific information of Golden's dangerous driving that exceeded in detail and volume the information provided to the police in *Navarette* (e.g., inability to drive in a straight line, stopping at a green light, sleeping behind the wheel, and hitting a curb while pulling into a parking lot), all of which amount to more than mere traffic violations and, when considered together, are "sound indicia of drunk driving." *See id*.

Furthermore, also like in *Navarette*, Polasek reported Golden's driving to law enforcement via the 911 system, Polasek's description of Golden's erratic driving to the 911 dispatcher indicated that the tip was based on his eyewitness knowledge, and Polasek told the dispatcher that he was following Golden and he made a contemporaneous report of his observations. Unlike the twenty minute gap in *Navarette*, law enforcement found Golden parked at the gas station within minutes of Polasek reporting the vehicle's location to the dispatcher, all the while the vehicle remained under the citizen informant's constant observation. All the factors recognized as indicia of reliability in *Navarette* are present in this case. *See id*. at 1691–92. Furthermore, unlike in *Navarette*, in which the 911 caller was considered "anonymous" for purposes of the Court's analysis, this case contains additional indicia of reliability because Polasek made himself accountable for his

tip by identifying himself and his vehicle, and staying at the gas station in order to give his statement to the deputies. *See Martinez*, 348 S.W.3d at 923 (noting that when citizen informant provides self-identifying information, his degree of reliability "significantly improves"); *see also Derichsweiler*, 348 S.W.3d at 914–15 (noting that "information provided to police from a citizen informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable.").

Golden takes issue with the fact that Polasek did not have contact with Officer Nguyen prior to the stop. A citizen informant does not have to have contact with the officer who performs the stop in order for the stop to be lawful. *See Navarette*, 134 S. Ct. at 1688–89 (holding officer, who had no interaction with 911 caller and did not observe defendant commit any traffic violations, had reasonable suspicion to stop defendant's vehicle based on information caller provided to 911 system). Furthermore, the record establishes that Polasek was in constant contact with the 911 dispatcher for over twenty minutes preceding the stop. *See Derichsweiler*, 348 S.W.3d at 914–15 (explaining that 911 dispatcher is regarded as "cooperating officer" for purposes of determining reasonable suspicion); *Martinez*, 348 S.W.3d at 924 (stating that "any information known to the police dispatcher is imputed to the detaining officer").

We hold that Deputy Nguyen had reasonable suspicion to stop Golden's vehicle in the gas station parking lot based on the information Polasek provided to the 911 dispatcher, pursuant to *Navarette*. It was not necessary for Deputy Nguyen to wait until he personally observed something that would give rise to reasonable suspicion that a crime was afoot. *See Brother*, 166 S.W.3d at 259 ("To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny.").

Accordingly, we overrule Golden's challenge to the trial court's denial of his motion to suppress.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).