**Opinion issued December 15, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-01062-CR
_____

**JELLIAN ARDOIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1458322

## MEMORANDUM OPINION

Based on information received from an anonymous 911 call, police officers conducted an investigative stop and temporarily detained appellant Jellian Ardoin. After smelling the odor of marijuana coming from inside his car, the officers performed a search and found marijuana and cocaine.

Ardoin pleaded guilty, without an agreed recommendation as to punishment, to the offense of possession with intent to deliver cocaine weighing between 4 grams and 200 grams. *See* TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D), 481.112(a)(d). The trial court sentenced him to 25 years in prison. In a single issue on appeal, Ardoin challenges the investigative stop and contends that the trial court erred by refusing to suppress evidence acquired after the stop.

Because the arresting officers had reasonable suspicion that Ardoin had been engaged in criminal activity, we affirm the judgment of conviction.

## Background

A 911 operator received a call from a woman on the southeast side of Houston, in an area known for gang and narcotics activity. The caller reported that a man had been standing in the middle of the street waving a gun, and that he had entered a black Dodge Challenger. She gave the operator a description of the man, the location of the incident, and the car's license plate number.

Two police officers were dispatched to the location within several minutes of the call. The officers received a "call slip" from dispatch, containing the information reported on the 911 call. Upon arrival, the officers found a black Challenger backing into a driveway. The officers verified that the license plate matched the number reported on the 911 call, and they pulled into the driveway in front of the Challenger. They got out of their car and approached the vehicle,

2

which was occupied by appellant Jellian Ardoin. As the officers approached, Ardoin opened the car door. The officers smelled the odor of marijuana coming from inside the vehicle. Based on the smell of marijuana, one of the officers searched the car and found marijuana and powder cocaine inside.

Ardoin was arrested and indicted for possession with intent to deliver cocaine weighing between 4 grams and 200 grams. Prior to trial, he filed a motion to suppress evidence. He argued that the 911 call was not sufficiently reliable and that the call did not allege that he had engaged in criminal activity, both of which, he argued, would be necessary to justify an investigative stop. Thus, Ardoin only challenged the legality of the initial stop. He requested that the trial court suppress all evidence obtained after that point. He did not challenge the officers' subsequent search of his vehicle or his arrest.

At the time of trial, the court had not yet ruled on the motion to suppress. The court arraigned Ardoin in front of the jury, and he initially pleaded "not guilty" to the charges alleged in the indictment. The State introduced a recording of the 911 call and then called one of the officers who temporarily detained Ardoin to testify about the events leading up to the arrest. Before the officer testified about the investigative stop, the court held a hearing on the motion to suppress outside of the presence of the jury. During the hearing, the officer testified that neither he nor the other arresting officer personally had observed Ardoin engaged in criminal

3

activity prior to detaining him. The information provided in the 911 call was the only information from which the officers formed a suspicion of criminal activity. The court denied the motion to suppress. Ardoin changed his plea to guilty, and he also pleaded true to the alleged enhancements.

The trial court assessed punishment at 25 years in prison. Ardoin appealed.

**Analysis**

In his sole issue, Ardoin contends that the trial court erred by denying his motion to suppress evidence. Specifically, he argues that the officers' investigative stop could not be supported by the information given to them by dispatch. He contends that because the 911 call did not contain sufficient indicia of reliability, it did not support a reasonable suspicion of criminal activity necessary to conduct the stop.

A ruling on a motion to suppress evidence is reviewed for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d

4

278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or part of the testimony of a witness. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Although appellate courts generally limit their review of the trial court's ruling to an examination of the evidence produced at the suppression hearing, because the court heard the motion to suppress after a portion of the State's case-in-chief, we will consider all of the evidence that was before the court at the time of its ruling. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

A police officer may detain a person temporarily for investigative purposes if the officer reasonably suspects that the detained person is connected with a crime. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *Wade v. State*, 422 S.W.3d 661, 668–69 (Tex. Crim. App. 2013). Reasonable suspicion exists when a police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014); *see Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Matthews*, 431 S.W.3d at 603. Courts determine

if reasonable suspicion exists by objectively considering the totality of the circumstances. *Id*.

Whether a reasonable suspicion exists "is dependent upon both the content of information possessed by police and its degree of reliability." *Navarette*, 134 S. Ct. at 1687 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)). The detaining officer need not personally observe nor be aware of every fact that supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)); *see also Navarette*, 134 S. Ct. at 1687–88; *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

A stop may be justified if the facts underlying the stop are observed by a civilian informant. *See Navarette*, 134 S. Ct. at 1688; *see also Brother*, 166 S.W.3d at 257. An anonymous tip alone is rarely enough to justify an investigative stop. *See Navarette*, 134 S. Ct. at 1688; *see also Martinez v. State*, 348 S.W.3d 919, 923–24 (Tex. Crim. App. 2011). But when an anonymous tip is supported by "sufficient indicia of reliability," it may justify a stop. *See Navarette*, 134 S. Ct. at 1688; *Martinez*, 348 S.W.3d at 923–924. Courts have identified several indicia of reliability with respect to tips from a citizen informant. An informant may be

treated as more reliable if he provides a firsthand account and a detailed description of wrongdoing. *Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Navarette*, 134 S. Ct. at 1689; *Derichsweiler*, 348 S.W.3d at 915–16. The more information provided by the informant that the police are able to corroborate, the more reliable the tip. *See Taflinger*, 414 S.W.3d at 885. Courts consider an informant who is not connected with the police inherently trustworthy when advising the police of suspected criminal activity. *Id*. The Supreme Court has recognized that because the 911 system "has some features that allow for identifying and tracing callers," tips from 911 callers should be considered more reliable. *Navarette*, 134 S. Ct. at 1689–90; *see Carr v. State*, No. 01-15-00246-CR, 2016 WL 796878 at *3–4 (Tex. App.—Houston [1st Dist.] March 1, 2016, no pet.) (mem. op., not designated for publication). Thus, in order for the officers to have properly detained Ardoin and conducted an investigative stop, the 911 call must have contained sufficient indicia of reliability and the call must have contained information that provided the officers with a reasonable suspicion that he had engaged in criminal activity. *See Martinez*, 348 S.W.3d at 924; *Matthews*, 431 S.W.3d at 603.

In *Navarette*, the Supreme Court analyzed whether a 911 call contained sufficient indicia of reliability to justify an investigative stop. *Navarette*, 134 S. Ct. at 1686–87, 1692. In that case, highway patrolmen received a report from an

anonymous 911 caller that a silver Ford F–150 pickup traveling southbound on the highway had run him off the road. *Id*. at 1686–87. A few minutes later, a highway patrolman encountered a truck matching the one described by the caller traveling in the direction reported. *Id*. at 1687. Though the record contained no indication that the patrolman himself observed the silver pickup driving erratically, the Court held that the caller's tip contained adequate indicia of reliability to support a reasonable suspicion for a stop, given that it was based on eyewitness knowledge, was contemporaneously made, and was made to the 911 emergency system. *Id*. at 1686–87, 1692.

The tip regarding Ardoin was given to the officers through the 911 emergency system, therefore creating some indicia of reliability. *See id*. Further, the caller provided the dispatcher with information based on personal knowledge. She reported that she watched a man in the street waving a gun. She described the man and his car, including his exact license plate number, and correctly identified their location. The officers arrived at the location within minutes of the 911 call. Upon their arrival, the officers were able to corroborate much of the information provided by the caller. They found a black Dodge Challenger with a license plate number matching the one given by the caller, and they found a man matching the description given by the caller. Thus, the 911 call received in this case contained

sufficient indicia of reliability. *See id*.; *see also Derichsweiler*, 348 S.W.3d at 915–16; *Taflinger*, 414 S.W.3d at 885.

Ardoin attempts to distinguish the 911 call in this case from the one in *Navarette* because this caller did not identify herself to the dispatcher. But in coming to its conclusion that a 911 call could contain sufficient indicia of reliability, the *Navarette* Court assumed that the 911 caller was anonymous. *Navarette*, 134 S. Ct. at 1687 n.1. The fact that the caller in this case did not identify herself to the dispatcher does not deprive the call of its indicia of reliability. *See id*. at 1689–90.

With respect to the requirement that the call had to provide the officers with a reasonable suspicion of criminal activity, Ardoin factually disputes that the caller reported a man waving a gun in the street. Instead, he contends that the 911 operator—not the caller—made the statement that the man was waving a gun, and therefore the information provided to the officers was incorrect. From this he argues that even if the call were reliable, its substance did not justify an investigative stop. He contends the call itself did not provide information sufficient to provide the officers with a reasonable suspicion that he was engaged in criminal activity, yet the officers relied solely upon the information provided to them regarding the call in conducting their investigative stop of Ardoin.

Despite characterizing the recording of the 911 call as "unclear," the trial court found that it was the caller, not the 911 operator, who stated that a man was waving a gun. Because we give almost total deference to the trial court's determination of historical fact, we accept the trial court's finding. *Neal*, 256 S.W.3d at 281.

When the officers detained Ardoin, they had a sufficiently reliable tip from an eyewitness who stated that a man was waving a gun in the middle of the street. This action took place in area of town that is known for high levels of gang and narcotic activity. Before conducting an investigative stop, the officers corroborated most of the information provided by the caller. The only thing the officers did not see was Ardoin waving the gun.

The officer who conducted the investigative stop believed that Ardoin had engaged in deadly conduct. Waving a gun around in the middle of the street could constitute the offense of deadly conduct. *See* TEX. PENAL CODE § 22.05 (a person commits deadly conduct "if he recklessly engages in conduct that places another in imminent danger of serious bodily injury"). Therefore, based on an objective view of the totality of the circumstances, the officers possessed sufficient information to support a reasonable suspicion that Ardoin had been engaged in criminal activity. *See Derichsweiler*, 348 S.W.3d at 916–17.

Because the 911 call contained sufficient indicia of reliability and the totality of the circumstances supported a conclusion that the officers had reasonable suspicion that he was or had been engaged in criminal activity, we hold that the officers properly detained Ardoin for an investigative stop. Therefore, the trial court did not abuse its discretion by denying the motion to suppress evidence.

We overrule Ardoin's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).