

# NUMBER 13-21-00191-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JESUS MARTINEZ JR.,**                                                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                     **Appellee.**

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellant Jesus Martinez Jr. was convicted of capital murder and sentenced to life imprisonment without possibility of parole. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). On appeal, he challenges the trial court's order denying his pretrial motion to suppress evidence. By a single issue, Martinez argues that law enforcement had no reasonable suspicion to detain him. We affirm.

# I. BACKGROUND

Martinez was charged by indictment with capital murder by causing the death of multiple persons. *See id.* § 19.03(a)(7)(A).[1] Prior to trial, he filed a motion to suppress alleging that police illegally detained him.

At a pretrial suppression hearing, the trial court heard the testimony of Victoria Police Department officers Elizabeth McClain and Justin Garcia. On September 21, 2018, McClain responded to a report of a "Hispanic male" with a gun at a McDonalds in Victoria. McClain testified she spoke with three employees of the restaurant who encountered the gunman: Cory Rosas, Lola Perez, and Anestacio Perez.

Rosas told McClain that a man approached the three employees while they were outside the restaurant on a smoke break; the man said that Lola Perez owed him money for synthetic marijuana. Rosas told McClain that the man became "aggravated" when Rosas told the man he did not know what he was talking about. Rosas reported that the man "asked if they knew what he had and then he put his hand to his front pants pocket or waistband and displayed a gun" and told Rosas "to stay down before I shoot you." According to McClain, Rosas described the offender as a "bald[, ]short Hispanic male with tattoos on his face possibly wearing a gray shirt."

McClain testified that Lola Perez provided a substantially similar account to Rosas.

---

[1] Martinez was also charged with one count of tampering with or fabricating physical evidence under penal code § 37.09(d)(2), a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 37.09(d)(2) (stating that a person commits an offence if the person "observes a human corpse under circumstances in which a reasonable person would believe that an offense had been committed, knows or reasonably should know that a law enforcement agency is not aware of the existence of or location of the corpse, and fails to report the existence of and location of the corpse to a law enforcement agency"). The jury also found Martinez guilty of this count; however, the State abandoned it prior to sentencing.

According to McClain, she described the offender as "[a] Hispanic male bald, about her height, maybe a little taller than 5'3" with tattoos on his face, on his cheeks, and near his eyes, full sleeves wearing camouflage pants and a dark blue or plain blue-colored shirt."[2]

Anestacio Perez, Lola's brother, also provided a similar account to McClain as the other witnesses. He described the offender as "a short male that was bald, wearing camouflage pants and a blue shirt that was fading into another blue color" but made no mention of tattoos. All three witnesses advised McClain that the suspect "walked off on foot—possibly in a vehicle—but most likely on foot" to the east. McClain noted that, though the witnesses did not give identical descriptions of the suspect's shirt, they were unanimous as to "[h]is pants and physical description."

McClain testified she obtained surveillance footage from the McDonalds, which showed the three witnesses "having a conversation . . . around another Hispanic male in camouflage pants with a dark-colored shirt." She said the man in the camouflage pants matched the descriptions of the suspect provided by the witnesses. The surveillance footage also showed the man walking away to the east, as the witnesses had reported. However, McClain declined to identify the man in the surveillance video as Martinez because she "didn't see his face very clearly on the footage."

Garcia, who was off-duty and in an unmarked vehicle, testified that "[d]ispatch put out that there was a Hispanic male at McDonald's that had a gun and . . . that it was a Hispanic male with face tattoos, blue shirt, and camo pants." He believed dispatch also advised that the suspect was "short and bald." Within a minute after hearing the report,

---

[2] On cross-examination, McClain conceded that, in her police report, she wrote that Lola Perez had described the suspect's tattoo as "[p]ossibly a teardrop."

Garcia observed a man near the McDonalds "wearing a black shirt and camo pants" and "carrying a McDonald's cup." Garcia said that the distance between the suspect and the restaurant was consistent with the suspect having been there at the time of the initial 911 call. Further, the suspect was the only pedestrian in the immediate area. When another officer arrived "and hit her lights," the suspect "looked at her and then turned around and continued to walk north." At that point, Garcia drove up to the suspect, exited his vehicle, drew his gun, and commanded the suspect to get on the ground; the suspect complied. Garcia testified that the suspect was carrying a handgun with one round "in the chamber and two in the magazine." He stated that the suspect was "extremely belligerent," "acting what I call kind of crazy," and "calling the officers names." At the suppression hearing, Garcia identified the apprehended suspect as Martinez. Garcia also identified several photographs showing tattoos on Martinez's neck, right wrist, right hand, and right forearm.

On cross-examination, defense counsel asked Garcia whether it was "odd" that the suspect was not bald and did not have face tattoos, as some of the witnesses claimed. Garcia stated he did not notice that Martinez did not have tattoos on his face until after he had already detained him. He further stated: "A lot of times in my experience when someone says bald, it's bald or short [hair]." Garcia explained that, because the suspect was wearing camouflage pants and was carrying a McDonald's cup, "there w[ere] never any doubts in my mind" that he apprehended the correct suspect.

The trial court denied the motion to suppress. After trial, Martinez was convicted of capital murder and this appeal followed.

4

## II. DISCUSSION

## A. Applicable Law and Standard of Review

The United States and Texas Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Under the Fourth Amendment, a brief investigative detention is authorized only if an officer has "reasonable suspicion" to believe that an individual is involved in criminal activity. *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); *see Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *see also Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Id.* "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.* "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Derichsweiler*, 348 S.W.3d at 914.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We

5

give "almost total deference" to a trial court's determination of historical facts and mixed questions of law and fact that rely upon the credibility of a witness, but we apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We review de novo whether a certain set of historical facts gives rise to reasonable suspicion. *Wade*, 422 S.W.3d at 669. The trial court's ruling will be upheld if it is supported by the record and correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

## B.  Analysis

Martinez argues that, because he did not exactly match the physical descriptions the witnesses provided to McClain, Garcia did not have reasonable suspicion to detain him, and the trial court should have granted his motion to suppress. He claims in particular that, although the witnesses described the suspect as "bald" and with face tattoos, he is not bald and does not have any face tattoos. Martinez contends "[i]t is unreasonable for an officer to pick and choose parts of a description for purposes of reasonable suspicion to detain."

We note that, although Martinez argues that the trial court erred by denying his motion to suppress, he does not explain whether or how that ruling contributed to his conviction or punishment. *See* TEX. R. APP. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or

6

punishment."). In particular, Martinez does not explain in his appellate brief what evidence would have been excluded if the motion were granted, nor does he explain whether that evidence was relied upon by the jury in convicting him of capital murder.[3] Accordingly, even if we were to find that the trial court erred by denying the motion to suppress, Martinez has not established on appeal that such error would be reversible. *See id.*; *see also* TEX. R. APP. P. 38.1(i) (stating that an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

In any event, we can discern no error in the trial court's ruling. Courts have held that information provided in a face-to-face manner by a citizen who is unconnected from law enforcement is inherently reliable, given that the informant placed themselves in a position where they could have been easily identified and held accountable for their intervention. *See Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Arizpe v. State*, 308 S.W.3d 89, 93 (Tex. App.—San Antonio 2010, no pet.); *Mitchell v. State*, 187 S.W.3d 113, 117–18 (Tex. App.—Waco 2006, pet. ref'd); *State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.—Austin 2001, no pet.); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd). And "when several officers are cooperating, their cumulative information may be considered in assessing reasonable suspicion or probable cause." *State v. Martinez*, 569 S.W.3d 621, 626 (Tex. Crim. App. 2019) (first citing *State v. Duran*, 396 S.W.3d 563, 569 n.12 (Tex. Crim. App. 2013), and

---

[3] In his written motion to suppress, Martinez generally stated that, "[b]ut for the illegal detention and arrest," he would not have made any statements to law enforcement and would not have been identified as a suspect in the killings for which he was eventually convicted.

7

then citing *Illinois v. Andreas*, 463 U.S. 765, 771–72 n.5 (1983)).

In this case, McClain interviewed three witnesses at the McDonalds, each of whom stated that a short, bald Hispanic male wearing camouflage pants had threatened them with a handgun. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (stating that a person commits assault if he "intentionally or knowingly threatens another with imminent bodily injury"); *id.* § 22.02(a)(2) (stating that a person commits aggravated assault if he "uses or exhibits a deadly weapon during the commission of the assault"). The witnesses' descriptions of the suspect differed slightly: Rosas and Lola Perez said the man with the gun had tattoos on his face, and Lola Perez also said the man had "full sleeve" tattoos, whereas Anestacio Perez made no mention of tattoos. Further, Lola and Anestacio Perez described the suspect's shirt as blue, whereas Rosas described it as gray. McClain communicated the descriptions to dispatch, who in turn communicated the descriptions to Garcia. *See Martinez*, 569 S.W.3d at 626 (describing collective knowledge doctrine).

Garcia testified he detained Martinez because he was wearing camouflage pants, was carrying a McDonalds cup, and was the only pedestrian in the immediate area. Moreover, Garcia testified that "[t]he timeframe matched" in that Martinez was located only a short distance from the McDonalds where the witnesses had recently seen him. Garcia further testified that, when another officer arrived and activated her emergency lights, Martinez looked at the officer but continued to walk away. *See* TEX. PENAL CODE ANN. § 38.04 ("A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him.").

In fact, Martinez did not have face tattoos, and according to Garcia, he was wearing

8

a black shirt.[4] However, there is no dispute that Martinez matched the other characteristics described by the witnesses, including his ethnicity, his height, his arm tattoos, and his distinctive pants. Martinez cites no authority, and we find none, establishing that a suspect must *exactly* match *all* of the characteristics in an informant's description in order for there to be reasonable suspicion to detain. We conclude the suppression hearing testimony established that Garcia had specific, articulable facts which would lead him to reasonably conclude that Martinez had been engaging in criminal activity. *See Matthews*, 431 S.W.3d at 603. Accordingly, there was reasonable suspicion to detain Martinez, and the trial court did not err in denying his motion to suppress.

## III. CONCLUSION

We overrule Martinez's issue on appeal and affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of August, 2022.

---

[4] Martinez argues on appeal that he also did not match the witnesses' description because he was not "bald." However, though defense counsel repeatedly suggested through his questioning at the suppression hearing that Martinez was not "bald" at the time he was apprehended, there was no witness testimony to that effect.